### SCHWEINBURG v. ALTMAN.

(Supreme Court, Appellate Division, First Department. June 9, 1911.)

1. TRIAL (§ 284*)—INSTRUCTIONS—LAW OF THE CASE.

The instructions, when no objection or exception is taken to them, and when no requests for contrary instructions are made, are the law of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 683–685; Dec. Dig. § 284.*]

2. CONTRACTS (§ 350*)—RIGHT TO TERMINATION—EVIDENCE.

In an action on a contract giving defendant the absolute right to terminate it, provided the termination is not a sham to cut off plaintiff's rights, evidence *held* to justify a finding that defendant's purported termination was a sham and did not defeat plaintiff's rights.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 350.*]

3. CONTRACTS (§ 147*)—CONSTRUCTION—MEANING OF WORDS.

The court, in construing a contract reduced to writing with considerable care by one accustomed to the preparation of legal documents, must assume that the words used to express the rights and obligations of the parties were used deliberately and with intention.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 730; Dec. Dig. § 147.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. CONTRACTS (§ 274*)—TERMINATION—EFFECT—RIGHT OF PARTIES.**

A contract between an agent of a foreign manufacturer having the exclusive control of the sale of its products in the United States and owning trade-marks under which the products were sold, and the foreign manufacturer, and a third person, transferred the control of the products, including the rights of the agent, to the third person, who agreed that the contract should continue for 15 years subject to "termination" at the end of 5 years by the giving of written notice one year in advance to the agent and to the foreign manufacturer, and subject to the right of the third person to "cancel" the contract by written notice because of a change in import duties. A contemporaneous contract between the agent and the third person provided for the payment by the third person of a royalty on purchases made by the third person from the foreign manufacturer, and stipulated that, when the third person should cancel the contract after 5 years, the royalty should cease. The agent assigned his trade-marks to the third person. *Held*, that the termination of the first contract at the end of 5 years by the third person exercising his right to terminate did not discontinue the agent's right to the royalties which were in the nature of the price paid for the sale of his business, but his right terminated only on a cancellation of the first contract because of a change in import duties.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 274.*]

Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Emil Schweinburg against Benjamin Altman. From a judgment for plaintiff entered on a verdict, and from an order denying a new trial, defendant appeals. Affirmed.

See, also, 131 App. Div. 795, 116 N. Y. Supp. 318.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Edmund L. Mooney, for appellant.
William N. Cohen, for respondent.

SCOTT, J. This is an appeal by defendant from a judgment for one year's installment due to plaintiff, as it is claimed, under an agreement for the payment of royalties.

Prior to the year 1901, plaintiff was the agent in this country for the firm of Zoeppritz, Cantz & Ziegler, corset manufacturers of Cannstatt, Germany. He had the exclusive control of the sale of their products in this country, and owned certain of the trade-marks under which their goods were sold. His sole business was selling these goods. He had been engaged in this or a similar business for a number of years and was well known to defendant. In the year 1901 defendant desired to acquire control, in this country and Canada, of the whole output of the aforesaid German firm, and in July of that year a tripartite agreement was entered into between plaintiff of the first part, the German firm of the second part, and defendant of the third part. By this agreement plaintiff transferred to defendant "the entire and sole control of all grades made by Zoeppritz, Cantz & Ziegler for the United States and Canada, including all rights of the said party of the first part secured thereby for the United States and Canada; and the said party of the first part hereby agrees that the party of the third part shall become the sole agent of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said firm of Zoeppritz, Cantz & Ziegler for the United States and Canada." The German firm on its part agreed to ship and sell to defendant all goods he might order for sale in the United States and Canada, and that they would not manufacture and sell any corsets directly or indirectly for or to any one in the United States or Canada. The prices were to remain as theretofore, except for new styles, which were to be invoiced at as low a price as possible. There were other conditions in the contract which it is not necessary to recite. The contract contained the following clause as to its duration, which lies at the bottom of this controversy, and is therefore quoted at length:

"This contract is to take effect on the first day of November, 1901, and is to continue in force for the term of fifteen (15) years, subject to termination, however, at the expiration of five (5) years by the giving of written notice, by registered mail, one (1) year in advance to the said party of the first part, and to the parties of the second part; and further subject to the right of the said party of the third part to cancel this contract at any time by a written notice, sent by registered mail, to the said parties of the first and second parts, in case a change of customs should take place, by which the present rate of duties in the United States shall be increased to such an extent, as, in the judgment of the said party of the third part, the further importation of corsets is proved unprofitable, and, in this case, all outstanding orders shall be delivered and accepted by the party of the third part.

"This contract is to be binding upon the parties hereto, their heirs, executors and assigns forever."

Simultaneously with the execution of the above-mentioned contract, plaintiff and defendant entered into a contract for the payment by defendant to plaintiff of a royalty, in annual installments, in consideration of plaintiff's assignment to defendant of the sole control of the goods manufactured by the German firm, and to plaintiff's agreement to give up and liquidate his business.

This agreement can be more conveniently quoted than summarized. It reads as follows:

"Memorandum of agreement made and entered into this fifth day of July, 1901, by and between Emil Schweinburg, of the city of New York, in the state of New York, party of the first part, and Benjamin Altman, doing business under the name of B. Altman & Co. of the city and state of New York, party of the second part.

"In view of the party of the first part waiving all his interests and profits of the business hitherto made by him in the United States, by reason of his controlling and selling corsets manufactured by Zoeppritz, Cantz & Ziegler, of Cannstatt, Germany, and in consideration of the party of the first part having transferred the said control, as per contract executed this fifth day of July, 1901, the party of the second part agrees to pay to the party of the first part, during the term of said contract, and also for the term to be agreed to at the time of expiration of contract, an annual royalty of seven thousand five hundred ($7,500.00) dollars, payable quarterly, and in addition to this amount, a commission of ten (10%) per cent., to be paid to the party of the first part on all purchases made by the party of the second part from Zoeppritz, Cantz & Ziegler, of Cannstatt, Germany, exceeding the annual guarantee amount of one hundred and fifty thousand marks; the exact amount of commission to be calculated on the actual amount remitted to Zoeppritz, Cantz & Ziegler.

"It is also agreed that whenever the party of the second part should cancel the contract after five years, as stipulated, the annual royalty and commission shall cease.

"The party of the first part agrees that he will not transfer, sell or assign any of the trade-marks or trade-names now used or to be used for corsets manufactured by Zoeppritz, Cantz & Ziegler, during the term this contract remains in force, and also in case of a renewal for the use in the United States by any other party or parties except by the party of the second part. The party of the first part gives party of the second part herewith the right to import and sell corsets thus stamped, branded and labeled with the said marks and manufactured by Zoeppritz, Cantz & Ziegler to the parties which have hitherto dealt in them, and should these parties not continue to purchase from the party of the second part the said goods, the party of the second part has the right to sell the corsets bearing the trade-marks or trade-names and stamped, branded and labeled to other parties in the United States.

"The party of the second part agrees to uphold the various trade-marks and trade-names secured for the United States as far as possible, and promises to use the best efforts to increase the sale of corsets stamped, branded and labeled 'Z. Z.' and 'Au Cœur' by reason of his selling the said goods.

"The party of the second part further agrees that all rights for the said trade-marks and trade-names for use in the United States or Canada, shall revert to party of the first part whenever the contract before-mentioned is discontinued.

"Party of the first part further agrees that he will liquidate his present business immediately after this contract goes into effect, and that, during the term of this contract, and during its continuance, if renewed, he will not reestablish himself again in the same business in the United States.

"This contract to be binding upon the heirs, executors and assigns of both parties.

"[Signed]   Emil Schweinburg.   [L. S.]
             "B. Altman & Co.    [L. S.]

"In the presence of Milton M. Klein."

The plaintiff has recovered judgment for $7,500, with interest, representing the royalty due for the year commencing November 1, 1906. The defense to the action is that the contract between plaintiff, the German firm, and defendant was terminated by the latter, in accordance with the terms of said contract, on November 1, 1906, and that the contract for the payment of royalty thereupon by its own terms ceased. To this plaintiff replies that the contract between himself, the German firm, and defendant was never terminated actually and in good faith, but that defendant and the German firm pretended to terminate said contract and enter into a new one merely for the sake of eliminating plaintiff and avoiding the obligation to pay him the stipulated royalty. The case was submitted to the jury with instructions that under his contract with plaintiff and the German firm defendant had the absolute right for any reason, or for no reason, to terminate the contract on November 1, 1906, upon giving the requisite notice, but that, in order to cut off plaintiff's right to his stipulated royalty, the termination of the contract must be real and not merely pretended. After referring to the notice which defendant did give announcing his election to terminate the contract, the court said:

"Therefore the question of fact which will come before you for determination is: Was this a termination of the contract? Did Altman give a notice in good faith terminating that contract and intending to terminate that contract, or did he simply give that notice as a pretense to cut off Schweinburg from his commissions, and did he then intend to and did they go on with the contract in substantially the same form, turning over the whole product of the factory to Altman on substantially the same terms as in the written contract to which these three interests were parties? That is the question of fact for you to determine."

And again:

"The question for you to determine is: Was this all a part of one scheme? Did Altman, under his contract, by giving the notice, according to his theory, do so merely as a pretense and with the idea and fixed design of continuing on substantially the same terms with Zoeppritz, Cantz & Ziegler?"

To these instructions no objection or exception was taken by defendant, and no request for any contrary instruction was made by defendant.

[1] Indeed, no exception was taken by defendant to any part of the charge, and no request made by defendant was refused. It therefore stands as the law of the case that while defendant had the absolute right to terminate the contract on November 1, 1906, he could not by a pretended or sham termination cut off plaintiff's right to be paid royalties.

[2] By their verdict the jury have found that defendant did not terminate the contract, but only pretended to do so, and we cannot say that this finding is not justified by the evidence. That evidence consists of correspondence between defendant and the German firm, beginning with a final notice on defendant's part on October 13, 1905, of his intention to terminate the contract on November 1, 1906, coupled with statement that this action was taken with regret, and influenced by the large royalty which defendant was required to pay to plaintiff. Other correspondence followed resulting in an agreement reached in August, 1906, to continue the business relations under substantially the same terms, with but slight variations from the original contract, and since that time the business has apparently gone on without break or interruption just as it did before; defendant continuing to receive and control all of the output, for this country, of the factories of the German firm, using the same trade-marks which had been turned over to defendant by plaintiff. It is reasonably apparent, and the jury were quite justified in finding, that the original contract had never been terminated actually and in good faith, but that there had been only a pretended termination induced by a desire to avoid the obligation of paying plaintiff's royalty.

There is, however, another reason why the judgment appealed from is right.

[3] The contracts already quoted from were evidently drawn with considerable care, and by some one accustomed to the preparation of legal documents. We must assume, therefore, that the words used to express the rights and obligations of the several parties were so used deliberately and with intention.

[4] Turning to the tripartite agreement, we find that it is to run for 15 years, but may be sooner ended by the defendant in two contingencies: First. It might be *terminated* at the expiration of five years by the giving of written notice to plaintiff and the German firm one year in advance. For the termination of the contract under this clause it was not necessary that any reason should be assigned or should exist, except the will of the defendant; but, if thus terminated, it must be on November 1, 1906, not earlier or later. Goelet v. Spofford, 55 N. Y. 647. Second. The defendant reserved the right

to *cancel* the contract at any time "in case a change of customs should take place by which the present rate of duties in the United States shall be increased to such an extent as, in the judgment of the said party of the third part (defendant), the further importation of corsets is proved unprofitable." There was no time specified when this cancellation might take place. It might be at any time, before or after the five years, provided only the prescribed conditions arose. They did not arise, and the defendant never attempted to cancel the contract under this clause, but rests his case solely upon his right to terminate the contract at the expiration of five years.

Turning now to the contract between plaintiff and defendant, we find that the clause respecting the cessation of royalties reads as follows:

"It is also agreed that whenever the party of the second part should *cancel* the contract *after* five years, as stipulated, the annual royalty and commissions shall cease."

Here the cessation of royalty payments is made dependent, not upon the *termination* of the contract at the *expiration* of five years, but upon the *cancellation* of the contract *after* five years. According to the strict letter of the agreement, a termination of the contract at the end of five years, at the mere whim of defendant, would not terminate plaintiff's right to the annual royalty payment, and no reason is suggested why the strict letter should not control. Indeed, there seems to be some reason for assuming that this particular phraseology was used with intention. Plaintiff had not only negotiated a contract between the German firm and defendant, but had sold out absolutely to defendant his own business for a royalty of an amount to justify the inference that the business had been profitable. It may well be that, while he was unwilling to stake the permanence of his royalty payments upon the unqualified option of defendant to abrogate the contract, yet that he was willing to take the same chance as to changes in the tariff law that defendant must take, and to be content, after receiving royalties for five years, to abandon them if an increased duty made the business unprofitable, for the same condition would have destroyed his own business if he had not sold it to defendant. Whether this be the true explanation or not, the fact remains that, according to the letter of the contract between plaintiff and defendant, the termination of the tripartite agreement at the end of five years was not the event which was to discontinue plaintiff's right to receive the royalty, which was in the nature of a price paid for the sale of a business and not mere commissions on the amount of business done.

In either view, therefore, the judgment was right and should be affirmed, with costs.

LAUGHLIN and CLARKE, JJ., concur.

McLAUGHLIN, J. (dissenting). There is substantially little or no dispute between the parties as to the material facts involved. On the 5th of July, 1901, the plaintiff, who was then and for some time

had been the sole agent and representative in the United States of a German firm which manufactured corsets, entered into a tripartite agreement in which he was designated as party of the first part, the German firm as party of the second part, and the defendant as party of the third part, by which the latter acquired the exclusive right to sell, in the United States and Canada, corsets manufactured by such firm. The agreement provided that:

"This contract is to take effect on the first day of November, 1901, and is to continue in force for the term of fifteen (15) years, subject to termination, however, at the expiration of five (5) years by the giving of written notice by registered mail one (1) year in advance to the said party of the first part and to the parties of the second part."

Simultaneously with the execution of the contract, the plaintiff and the defendant entered into a contract—copy of which is set out at length in the prevailing opinion—wherein plaintiff was designated as party of the first part and defendant party of the second part. The fact is not disputed but what the defendant, within the terms of the contract between the plaintiff, the German firm, and himself, gave the notice within the time and manner therein provided that he would, at the expiration of the five years, terminate the contract. Notwithstanding that fact, the plaintiff claims he is entitled to, and has, recovered a judgment for $7,500, with interest, representing the royalties due under his contract with the defendant for the year following November 1, 1906; that is, the year following the termination of the contract with the German firm.

The right to maintain the action and sustain the judgment is predicated upon the proposition that the contract between the plaintiff, the German firm, and the defendant was never actually terminated in good faith; that it was a mere pretended termination entered into for the sole purpose of freeing the defendant from paying the plaintiff the royalties stipulated to be paid to him.

I am of the opinion that the defendant's motives in terminating the contract with the German firm are of no importance. The contract gave him the absolute legal right to terminate it at the expiration of five years, on giving a notice to that effect at the time and in the manner therein provided. He gave the notice as provided in the contract; it was thereby terminated; and the plaintiff thereafter was not entitled to the royalties provided in the contract between himself and the defendant because under their contract it will be observed there was an express provision that:

"It is also agreed that whenever the party of the second part should cancel the contract after five years, as stipulated, the annual royalty and commission shall cease."

The defendant having the legal right to terminate the contract with the German firm, and having exercised such right, it does not lie with the plaintiff to say it was not done in good faith. When one has a legal right to do a thing, his motives in doing it will not be inquired into.

Not only this, but I think the evidence clearly and conclusively shows that the defendant in terminating the contract acted in entire

good faith, and the finding of the jury to the contrary is against the evidence. It is true another contract, embodying some, not all, of the terms and conditions of the old contract, was entered into by the defendant and the German firm, which went into effect immediately following the termination of the old contract. The correspondence between the defendant and the German firm shows why the new contract was made. The defendant frankly stated in a letter to the German firm that he was terminating the old contract because it was impossible for him to continue the same, "owing to the very large commission which we have been paying to Mr. Schweinburg since our contract is in force, and which makes the cost of your goods almost prohibitive and beyond domestic competition." If the defendant could not carry out the contract with the German firm with profit to himself, by reason of the royalty which he had to pay to the plaintiff, then he could terminate it, though the sole purpose was to free himself from paying such royalty.

It is suggested, not by counsel, that, because the question of defendant's good faith in terminating the contract was submitted to the jury—to which no exception was taken and no request for instructions to the contrary made—thereupon such instruction became the law of the case, and defendant is not now in a position to raise the question. A complete answer to this suggestion, as it seems to me, is that, at the close of plaintiff's testimony, defendant's counsel moved for the dismissal of the complaint upon various grounds, one of which was that there was no proof that the notice terminating the contract was given in bad faith. And, again at the close of the whole case, upon similar grounds, the defendant's counsel moved for the direction of a verdict. The motions in each instance were denied and an exception taken. These exceptions cannot be destroyed because an exception was not taken to the charge submitting such question to the jury. Prior to the charge the court had held that defendant's good faith was a question to be submitted to the jury. It was therefore unnecessary to except to the charge on this subject in order to take advantage of the previous exceptions. An exception once taken to a ruling is available without thereafter repeating it to a similar ruling.

Besides, I think at the close of plaintiff's case the court should have dismissed the complaint, and, having failed to do this, then at the conclusion of the testimony should have directed a verdict for the defendant. The defendant not only, as we have seen, had a right to terminate the contract with the German firm, but there is absolutely no evidence which tends, as I read the record, either directly or indirectly, to establish that the defendant in terminating the contract acted in bad faith, even if that question be deemed a proper subject of inquiry.

The tripartite agreement was for a term of 15 years, but it might be sooner terminated: (1) At the expiration of five years by the defendant's giving the written notice therein provided; and (2) at any time in case there were a change in the tariff laws of the United States by which the duty should be increased to such an extent that, in the judgment of this defendant, further importation of corsets would prove unprofitable. The right of the defendant to terminate

the contract at the expiration of five years was fully and explicitly recognized by the plaintiff in his contract with the defendant. It was also recognized in the plaintiff's letter to the German firm (defendant's Ex. 8) in which, referring to the notice served by the defendant, he said:

"The communication which you made to me with regard to the notification of termination of B. A. & Co., surprises me very much for the alleged cause has no legal foundation. The notification of termination would have been warranted, but since B. A. & Co. have alleged a ground as the reason, from which you stand entirely remote, * * * I believe that you rightly refused the acceptance. * * * "

But it is suggested that the cessation of royalty payments under the contract is made dependent, not upon the *termination* of the contract at the *expiration* of five years, but upon the *cancellation* of the contract *after* five years; in other words, the argument is that, under the agreement between the plaintiff and defendant, a termination of the contract with the German firm would not terminate plaintiff's right to the annual royalty payment, but only if the contract were canceled by reason of an increase of duty after five years. I think the words "cancel" and "terminate," as used in the tripartite agreement, are used synonymously. In each instance the words were used to indicate an ending of the contract, and there is nothing to suggest a different meaning, when both contracts are read together, and this is the construction which the parties themselves, especially the plaintiff, put upon them. Plaintiff was securing a contract by which he was to be paid $7,500 a year for five years in any event, and, having secured that, he agreed, if the contract were ended between the defendant and the German firm after that time, he would not be entitled to the payment of royalty. This, too, is the theory upon which the action was tried and submitted to the jury. The court so held early in the trial, to which no exception was taken by the plaintiff. It said:

"I am going to hold in this case that, while the defendant, Altman, had the absolute right to terminate the contract by giving notice, that notice must be given in good faith, and that if he gave the notice for the purpose of eliminating the plaintiff from the contract and depriving him of the commission to which he was entitled under the contract, and with the purpose of immediately resuming relations with the German firm, then the plaintiff can recover, but that will be, of course, a question for the jury in this case to determine."

He did so hold in submitting the case to the jury, saying:

"The second contract by which Schweinburg was to get the sum of $7,500 a year during the continuance of the other contract had a provision that, if the other contract was terminated, that sum should also fall. At the end of the four years, a notice was given by Altman in which he said that he elected to take advantage of that provision of the main contract and end the contract. That notice was served upon the German firm and upon Schweinburg. * * * Of course Altman could not give notice simply for the purpose of terminating the commission to which Schweinburg was entitled. * * * Did Altman give a notice in good faith terminating that contract and intending to terminate that contract, or did he simply give that notice as a pretense to cut off Schweinburg from his commissions, and did he then intend to and did they go on with the contract in substantially the same form? * * * The plaintiff must convince you by a fair preponderance of the evi-

dence that his theory is correct, viz., that this contract was not in fact terminated in good faith, and that it continued on practically and substantially the same terms, and that the giving of the notice was merely a pretense to deprive him of his right to a commission."

No exception was taken to such instruction by the plaintiff, and it thereupon became, so far as he is concerned, the law of the case; in other words, the court held that under the proper construction of the two agreements the plaintiff was not entitled to recover if the notice were served by the defendant in good faith. This not only appears from the instructions given to the jury, but from the memorandum of the learned justice in denying defendant's motion for a new trial, in which he said:

"This case was not submitted to the jury on the theory that the contract was ended by the notice given by Altman, because, of course, under the decisions Altman had the right to terminate the contract. But the question left to the jury was whether the contract was not, in fact, still existing between Altman and the other party, and whether the notice was not a mere pretense to avoid paying plaintiff the amount agreed to be paid to him during the existence of the contract."

The plaintiff, therefore, is not in a position to urge the construction of the agreement suggested, even if it were the proper one, which I do not think it is. A party cannot adopt one construction of a contract for the purpose of getting a verdict, and, after that has been obtained, repudiate it and adopt another for the purpose of saving a judgment. The contract with the German firm was terminated by the defendant. He had a right to terminate it, and, while his motives are of no importance, nevertheless, so far as this record shows, he acted in the utmost good faith. The new contract which he made contained different terms. The old contract required him to purchase of the German firm, annually, corsets "amounting to at least 150,000 marks, German currency." This was eliminated from the new contract. Under the old contract, he could terminate it only in one of two ways—at the expiration of five years from its date, or at any time if the duties on corsets were increased to such an extent as to make importations unprofitable. Under the new contract, either party could terminate it by giving one year's written notice.

I am also of the opinion that the trial court erred in not admitting in evidence defendant's Exhibit 5a for identification. This was an agreement, dated October 24, 1903, between the plaintiff and the successor of the German firm, by which the plaintiff, in consideration of 9,250 marks paid to him, assigned and transferred to such successor rights which he had under certain contracts with the German firm, including the sole right to represent and sell its products in the United States and Canada. He simply obligated such successor to carry out the contract with the defendant to November 1, 1906, thereby putting it out of his power to perform, after that date, the tripartite agreement. Having put himself in this position, I think the defendant would have been justified in refusing to pay royalties after that time upon that ground alone, even though no prior notice had been given. Whether this be correct or not, the agreement was some evidence as to the construction which he put upon the tripartite agreement.

For the foregoing reasons I am unable to concur in the prevailing opinion.

I think the judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide event.

INGRAHAM, P. J., concurs.