AUDITOR GENERAL *v.* FLINT & PERE MARQUETTE RAILROAD CO.

1. RAILROADS—TAXATION—EXEMPTIONS.

Only such lands of a railroad company as are held and presently used for railroad purposes are exempt from taxation on the general roll; the exemption not applying to lands acquired by the company with a view to future use.

2. SAME—DEPOT GROUNDS.

Where a railroad company purchased a high bluff for depot grounds, and, after suitable grading and terracing, constructed a freight track along the bank of the river, and a proposed passenger track at a higher level, and provided the necessary roads and docks to facilitate the receipt and discharge of freight, the land was exempt from taxation on the general roll, although the construction of the depot was delayed, and the upper track was used mainly for storing cars.

Appeal from Manistee; McMahon, J. Submitted January 6, 1899. Decided April 18, 1899.

Petition by Roscoe D. Dix, auditor general, for the sale of lands delinquent for the taxes of 1895. From a decree setting aside certain taxes upon objections filed by the Flint & Pere Marquette Railroad Company, petitioner appeals. Affirmed.

*Frank L. Fowler*, Prosecuting Attorney, for petitioner.

*Dovel & Smith*, for contestant.

MONTGOMERY, J.   Certain lands belonging to the defendant were listed on the general assessment roll for taxation in the year 1895.   On the hearing of the auditor general's petition for the sale of delinquent lands, the railroad company filed objections to a decree against its lands.   The circuit judge held that certain of the lands were, and certain were not, assessable under the general tax law.   From this determination the auditor general appeals.

The rule as to what property of a railroad company is exempt from taxation on the general roll is correctly stated by counsel for the auditor general, viz., that such lands, and only such lands, as are held and presently used for railroad purposes, are exempt, and the exemption does not apply to lands which have been acquired with a view to a future use of them by the company.   *City of St. Paul* v. *Railway Co.*, 39 Minn. 112; *Milwaukee, etc., R. Co.* v. *City of Milwaukee*, 34 Wis. 271; *Republican Valley, etc., R. Co.* v. *County of Chase*, 33 Neb. 759.   Our own decision in *Auditor General* v. *Railroad Co.*, 114 Mich. 682, in no way conflicts with the rule stated above, but recognizes and applies that rule; nor do we understand the counsel for the appellee to contend for any other rule.

The question, therefore, is a question of fact: Were the lands in question actually used by the company for railroad purposes?   The property consists of a piece of land extending along the margin of the Manistee river, in the city of Manistee, for a considerable distance.   The lands were purchased in 1890, or about that date, and consisted of a high bluff rising some 50 feet above the river.   In 1892 the company formed the plan of extending its tracks across the lands parallel with the river, and constructing a freight track on the river bank, and a passenger depot on a higher level; thus making necessary a terrace at a

point between the two tracks, and also making necessary a cut beyond the track, and sufficient lands to give support to adjoining property. A witness for the company testified that it was necessary to get the full width of the land in question, in order to level off the sand bluff and get slope without trespassing on the adjoining property. This testimony is not contradicted. After the grading was mainly done, the two tracks were laid, and, while no freight house or passenger depot had been constructed when this tax was laid, the testimony is that the track nearest the river was used to receive the freight on; that a dock had been constructed at a cost of $15,000; and that freight was taken from freight boats over this dock, and directly to the cars, and loaded from the cars to the boats in some instances. As to the track on the higher level, the testimony is that it was in daily use for storing cars, and the testimony also shows that the company had constructed a cobblestone roadway to admit of teams driving upon the ground adjoining this upper track, and receiving freight there. We think that the circuit judge was right in holding that the company was holding these lands for railroad purposes.

The decree will be affirmed, with costs.

The other Justices concurred.