## FARMERS' & MECHANICS' NAT. BANK v. CENTRAL GUARANTY CO. (No. 6761.)

(Court of Civil Appeals of Texas. San Antonio. May 17, 1922.)

Time ⊜⏤15—Cancellation of contract eight days after time stipulated for exercise of such right held ineffective.

Under a contract whereby a bank agreed to pay a directory company $150 per year for a subscription to a bank directory and a listing of its name and certain data therein in exclusion of other local banks for five years, with the privilege of cancellation by the bank "at the end" of the first year, reserved in the contract at the instance of the bank, an attempt to cancel eight days after the end of the first year was ineffective; the privilege being solely for the benefit of the bank and the directory company being under no duty to ascertain the bank's intention to cancel.

Appeal from Tarrant County Court; Hon. W. P. Walker, Judge.

Action by the Central Guaranty Company against the Farmers' & Mechanics' National Bank. From judgment for plaintiff, defendant appeals. Affirmed.

Lassiter & Harrison and J. T. Pearson, all of Fort Worth, for appellant.

James & Conner, of Fort Worth, for appellee.

COBBS, J. Appellee sues appellant to recover on a written contract as follows:

"City of Fort Worth, Tex., 3/16/1916.

"Central Guaranty Company, Fifth Ave. Bldg., New York, N. Y.: Please send to our address for five years The Merchants' Bank Directory for which we will pay the sum of $150.00 per year on receipt of first copy following date of contract, and annually thereafter. Subscription commences July 1, 1916. Subscription ends July 1, 1921.

"Including name of bank in Merchants' Bank Directory, names of officers, capital surplus and undivided profits and deposits.

"This bank to have sole representation in this city in Merchants' Bank Directory."

Following words written with pen and ink by duly authorized agent of plaintiff:

"Privilege to cancel at the end of first year. Central Guaranty Co., per C. A. Smith."

The sum sued for is $600 for unpaid subscriptions for the years 1917, 1918, 1919, and 1920. Appellant received and paid the subscription of $150 for the first year commencing July 1, 1916. Prior to July 1, 1917 (the second publication), plaintiff had its directory off the press completely bound and ready for distribution, containing the same matter in reference to the bank as was contained in the 1916 volume. On July 2, 1917, appellee mailed to appellant from New York

a bill or statement for the year's subscription from July 1, 1917, to July 1, 1918.

On July 9, 1917, defendant wrote to appellee acknowledging receipt of said bill, and replied:

"Unless you have our contract covering this period, we do not believe that we would care to continue our subscription, and would like to have it canceled."

Appellee refused to permit the cancellation thereof because not done within the terms of the contract, which required it to be canceled "at the end of the first year." And the question raised and here stated by us in plain, simple language is, Did appellant cancel the contract within the terms, meaning, and spirit of the contract? This contract was not signed in duplicate, and, from the vacillating letter of appellant, it would seem that appellant had forgotten the terms of the contract until the demand of payment was made upon it for the second year's subscription after a part of the contract then had been performed. The parties must be held bound as they bound themselves. The letter itself attempting to exercise the privilege was written some eight days "after the end of the first year" after the expiration of the time for the privilege to cancel.

We cannot agree with the appellant there was any duty imposed on appellee to ascertain whether or not appellant would exercise the privilege to cancel. But, on the contrary, it was a personal privilege written therein for appellant alone, and to take advantage of it should have timely given the notice the contract provided for his benefit. It alone could cancel the contract; appellee reserved no such mutual provision, and it would be compelled to go right along with the contract and perform it unless "at the end of the first year" appellee was advised by appellant it exercised its privilege of cancellation. This was a valuable right reserved to appellant, not mutual to appellee by any means, to be relieved of substantial terms of the written contract, which may be said to be quite as substantial as the right to continue it. Pomeroy's Eq. Remedies, §§ 806, 807; Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; Weiss v. Claborn (Tex. Civ. App.) 219 S. W. 884; Young v. Jones (Tex. Civ. App.) 222 S. W. 691; Words & Phrases, Second Series, pp. 341–354; I. X. L. Furniture & Carpet Installment House v. Beretz, 32 Utah, 454, 91 Pac. 279; Fine Realty Co. v. City of New York, 53 Misc. Rep. 246, 103 N. Y. Supp. 115; Ferree v. Moquin, etc., Coal Co., 29 Misc. Rep. 624, 61 N. Y. Supp. 120.

There is no claim that the terms of the contract were not written as agreed upon by the parties. There is no fraud or mutual mistake alleged nor proven. There is no ambiguity in its language.

Appellant was contracting for service it believed it would receive by its business being displayed in a directory, published annually, coming off the press on July 1st of each year. Clearly the privilege to cancel "at the end of the first year" meant July 1, 1917. We cannot give to it any other meaning. This appellant failed to timely take advantage of.

We find no reversible error assigned, and the judgment of the trial court is affirmed.