[No. 19547.    Department One.    December 9, 1925.]

CENTRAL GUARANTEE COMPANY *et al.*, *Appellants*, v.
NATIONAL BANK OF TACOMA, *Respondent*.[1]

[1] CONTRACTS (73)—CONSTRUCTION—ALTERNATIVE STIPULATIONS AND
OPTIONS—TIME FOR EXERCISING OPTION.  A five-year subscription
to a directory, commencing January 1, 1921, with the "privilege
to cancel at the end of 1st year," authorizes a cancellation after
the end of the first year, so that notice thereof given January 11,
1922, is in time.

Appeal from a judgment of the superior court for
Pierce county, Clifford, J., entered July 10, 1925, upon
findings in favor of the defendant, in an action on con-
tract, tried to the court.  Affirmed.

*John S. Jurey* and *Leopold M. Stern*, for appellants.
*Hayden, Langhorne & Metzger*, for respondent.

FULLERTON, J.—On August 4, 1920, the respondent,
The National Bank of Tacoma, entered into a subscrip-
tion contract with the appellant, Central Guarantee
Company, reading as follows:

                              "City of Tacoma, Wash., 8/4/1920
"Central Guarantee Company
Fifth Avenue Bldg.,
New York City, N..Y.

"Please send to our address for 5 years Special
Mercantile Edition of The Merchants' Bank Directory
and List of Guaranteed Attorneys, for which we will
pay the sum of 100.00 Dollars per year on receipt of
first copy following date of contract, and annually
thereafter.  Subscription commences 1-1-21.  Subscrip-
tion ends 1-1-26.  Including name of bank, names of
officers, capital, surplus and undivided profits and de-

[1]Reported in 241 Pac. 285.

posits. This bank to have sole representation in this city.

"The National Bank of Tacoma,
"Tacoma, Wash.
"A. A. Mattison, Cashier."

Prior to the execution of the writing by the bank, and as a part of the contract, there was indorsed thereon by the agent taking the subscription, the following words: "Privilege to cancel at the end of 1st year by this bank."

The directory of the appellant company was an annual publication, and the publication for the year 1921 was duly delivered to the bank and paid for by it. On January 11, 1922, the bank notified the appellant by letter that it elected to cancel the contract. The appellant refused to recognize the right of the respondent to so cancel it, and annually thereafter during the term of the contract sent to the respondent its publications. The respondent, however, refused to receive or pay for them.

The present action was instituted in January, 1925, to recover the unpaid installments evidenced by the subscription. The complaint declared upon the contract. The answer, among other defenses, set up the cancellation of the contract pursuant to the optional clause indorsed thereon. The action was tried by the court sitting without a jury. It found the facts substantially as we have related them, and concluded therefrom that there could be no recovery. The appeal is from the judgment entered in accordance with the findings and conclusions.

The controversy, as it is presented to this court, is a narrow one. It is the appellants' contention that the right granted to the respondent to terminate the contract at the end of the first year is in the nature of an option, which could be exercised at some period "prior

to the last moment of the last day'' of the time fixed, and that any attempted exercise of it after that time came too late. On the other hand, the respondent contends that it had until the end of the full period of the year to determine whether it would continue or annul the contract; and, since no time after the expiration of the year was fixed by the terms of the contract within which it must exercise the right, the law grants it a reasonable time in which to exercise it, and that it did do so within a reasonable time.

Both parties find consolation in our own decisions. The appellants cite and rely on the cases of *Neeson v. Smith*, 47 Wash. 386, 92 Pac. 131; *Sandberg v. Light*, 55 Wash. 189, 104 Pac. 205, and *Olsen v. Northern Steamship Co.*, 70 Wash. 493, 127 Pac. 112. But we think there is a difference between the contracts under consideration in those cases and the contract in the case at bar. The first involved a contract to sell land. The facts of the case are somewhat complicated, but the contract was held to be an option to purchase ''within two years'' from a stated date, and could not be exercised after a lapse of that time. This will appear from the following excerpts taken from the opinion:

''The honorable trial judge arrived at the correct conclusion in holding that it was an option, and that appellant's right to tender payment and demand a deed expired on August 13, 1900. While it is true that the agreement obligated the respondents Smith and wife to sell to the appellant any or all of the lands within a period of two years, it will also be noted that the appellant was not required to take any of such lands, although he might at his option do so, at the prices stated and within the period named. To this extent the contract was unilateral. An obligation whereby one party, for a valuable consideration, binds himself to sell at a fixed price within a certain time, but makes it discretionary with the other party to pur-

chase, being a contract by which the vendor stipulates that the proposed vendee shall have the right to buy at such fixed price and within such certain time or not, at his election, is in law an option. 6 Current Law, 1784; *Lawrence v. Pederson*, 34 Wash. 1, 74 Pac. 1011; *Black v. Maddox*, 104 Ga. 157, 30 S. E. 723; *Ide v. Leiser*, 10 Mont. 5, 24 Pac. 695, 24 Am. St. 17. . . . "The agreement involved in this action being a contract for an option, the appellant had no rights thereunder after the expiration of the two years, unless he had, within that time, elected to take the property, had tendered the purchase money, and had demanded a deed, which it is not contended he did."

The second of the cases was similar in its purport to the first, and a like conclusion was reached; the court quoting from the earlier opinion to substantiate its conclusion.

In *Olsen v. Northern Steamship Co.*, it appeared that the defendant company employed the plaintiff as master mariner of a steamship owned by it at a stated salary. As a further consideration for the employment the plaintiff purchased certain shares of the capital stock of the defendant company, the company agreeing that should the plaintiff be discharged as such master, "the defendant would, within six months after said discharge, at plaintiff's option, take redelivery of said shares, and repay plaintiff the par value thereof." We held that the option, to be available to the plaintiff, had to be exercised within the six months' period after the discharge, and that an attempt to exercise it after the expiration of that period came too late.

The case on which the respondent places its principal reliance is *McDougall v. O'Connell*, 72 Wash. 349, 130 Pac. 362, 131 Pac. 204. In that case, the plaintiff had purchased certain mining property from the defendant, taking an agreement from the defendant evidenced by the following language:

" 'If Mr. McDougall is dissatisfied with the property I have sold him in Camp O'Connell, Elk county, Nevada, at the end of three years, he keeping up his share of the assessment work, I agree to return him the amount he has paid for it, $2,500, with 10% interest.' "

The limitation prescribed in the contract expired on May 20, 1911, and the plaintiff expressed his dissatisfaction with the property and his election to rescind the contract two days later. The trial court held that the exercise of the right granted by the contract came too late and denied a recovery. On the appeal, we reversed the judgment, holding that the plaintiff could not declare his dissatisfaction with the purchase prior to the expiration of the time prescribed in the contract, and that he had a reasonable time thereafter in which to exercise the right. In the course of the opinion it was said:

"The first question presented requires the interpretation of the clause 'at the end of three years,' as used in the contract. Under this provision the appellant could not have declared his dissatisfaction prior to the expiration of the three years mentioned, for the contract specifies otherwise. Contracts with like or similar language have been frequently construed by courts of last resort to mean that notice of dissatisfaction or demand for the return of money must be made within a reasonable time after the expiration of the time stated. 'At the end of three years' in contracts of this character means within a reasonable time thereafter. *Rogers v. Burr*, 97 Ga. 10, 25 S. E. 339; *La Dow v. Bement & Sons*, 119 Mich. 684, 79 N. W. 1048, 45 L. R. A. 479."

A second case cited is *Tacoma Nat. Bank v. Sprague*, 33 Wash. 285, 74 Pac. 393. That was a proceeding to revive a judgment. The statute then provided:

"If any judgment remain unsatisfied in whole or in part at the end of five years after the date of its rendi-

tion, the lien thereof may be revived and continued as in this section provided.''

The mover in the proceeding, holding a judgment, sought to revive it before the end of the five year period. This we held he could not do, using this language:

''The statute clearly provides that, if any judgment shall remain unsatisfied in whole or in part *at the end* of five years after the date of its rendition, the lien thereof may be revived or continued. It seems clear that the words ''at the end' mean after the expiration of five years.''

The appellant argues that we have here made a distinction where no room for distinction exists; that in each of the instances, an option was granted, and that,

''Whatever difference there may be in the scope or meaning of these two terms or phrases [''within the year'' and ''at the end of the year''], when generally used, when used in an option contract to fix a limitation of time for the exercise of an option, they mean the same so far as fixing a definite limitation is concerned.''

[1]    But we cannot agree with this reasoning. There is nothing peculiar about an option contract that differentiates it from any other contract in so far as the construction of the language used is concerned. Like every other contract, the words employed therein must be given their ordinary and popularly accepted meaning, in the absence of anything to show that they were used in a different sense. There is, we think, in the ordinary understanding, an essential difference in meaning between the expression ''within one year'' and the expression ''at the end of one year.'' Most certainly, the ordinary person, a person not versed in the technical lore of the law, would understand that a right granted to be exercised ''within one year'' would expire with the expiration of the year,

while he would equally understand that a right granted to be exercised "at the end of one year" arose at the expiration of the year. Stated in another way, he would understand from the first expression that the end of the year marked the expiration of the granted right, while he would understand from the latter that it marked its beginning. We but applied this principle in the cited cases, and further investigation convinces us that there is not only no conflict between them, but that the distinction made has for its foundation a sound basis.

The appellant has called to our attention cases from other jurisdictions which hold that there is no essential difference in legal effect between the expressions noted and which reach a conclusion different from that reached by us. Perhaps the best reasoned of these are the cases of *Schweinburg v. Altman,* 145 App. Div. 377, 130 N. Y. Supp. 37, and *I. X. L. Furniture & Carpet Installment House v. Berets,* 32 Utah 454, 91 Pac. 279. To the first, we note a dissenting opinion by two of the five judges participating, which to our minds destroys much of the force of the main opinion. The second was by the full court. We shall not, however, notice the argument. It is enough to say that we find a decided conflict in the authorities from other jurisdictions. Supporting our conclusion are the cases of *Rogers v. Burr,* 97 Ga. 10, 25 S. E. 339, and *La Dow v. Bement & Sons,* 119 Mich. 684, 79 N. W. 1048, cited in our case of *McDougall v. O'Connell.* Another case is *Davis v. Godart,* 131 Minn. 221, 154 N. W. 1091, where other supporting cases will be found.

It is our opinion that the judgment of the trial court is without error, and it will stand affirmed.

TOLMAN, C. J., HOLCOMB, ASKREN, and MITCHELL, JJ., concur.