## BROWN METHOD COMPANY *v.* JOSEPH GINSBERG, ET. AL.

*License for Patented Device—From Year to Year—Termination by Notice.*

A license to use a patented device, to "continue from year to year during the term of" the patents, at a named yearly fee, could be discontinued by the licensees at the end of any year, it not necessarily continuing until the expiration of the patents.
**pp. 416, 417**

In such a case it was necessary that the licensees, before the end of a year, give notice to the licensor of their intention to terminate the license, in order to relieve themselves of liability for the fee for the ensuing year.          pp. 417-419

A letter mailed in Baltimore is to be presumed not to reach the addressee in New York until the next day.          p. 417

*Decided July 8th, 1927.*

Appeal from the Superior Court of Baltimore City (ULMAN, J.).

Action by the Brown Method Company against Joseph Ginsberg and others, trading as S. Ginsberg Sons. From a judgment for defendants, plaintiff appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George Ross Veazey,* with whom was *Vernon Cook* on the brief, for the appellant.

*Robert Biggs,* with whom was *Richard D. Biggs* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appeal in this case is by the plaintiff in a suit for a stipulated yearly license fee for use of a patented device. Judgment was entered for the defendant upon a verdict directed by the trial court, and the single exception taken is one to the direction of the verdict.

The appellant, a corporation engaged in business in New York City, is the owner of patents for a device to facilitate alterations by retailers in ready-made trousers, to suit customers, and it granted to the appellees in Baltimore City, by a written contract, a license to make and sell trousers with this device, for an annual payment of $150 a year, in advance. It was agreed that the license should "continue from year to year during the term of said patents at the yearly license fee above given." The years were to be the calendar years, and the fee was duly paid for 1923 and 1924; and on December 30th, 1924, the appellant made demand for payment of the fee for the year 1925, but the appellees, by letter dated on December 31st, 1924, denied any obligation to pay a fee for another year, announcing that they had discontinued the use of the device. The dispute has arisen chiefly from different constructions of the stipu-

lation on the duration of the license and the obligation for the fee. The licensor contends that the provision for continuation "from year to year during the term of said patents" means that the license and the incidental obligation to pay shall run to the end of the life of the patents (which will be in 1932), and the licensees contend that it means to provide for continuation only for a year at a time, with the right of election in them to discontinue at the end of any one year, and the limit of possible continuation to be at the expiration of the patents. The trial judge came to the conclusion that the defendants' construction was the correct one, and this Court agrees.

The phrase "from year to year" seems to signify quite clearly a periodic continuation of the license, rather than an unbroken or uninterrupted continuation. It seems to mean that the relation created, while it is to continue during the term of the patents if uninterrupted, shall at no time have an assured life of more than a year, and that the licensees shall be at liberty to prevent continuation into a new year. Such is the familiar meaning of the phrase when used in relation to use and occupation of land, and we think that would be its ordinary signification irrespective of that particular usage. 1 *Tiffany, Real Property,* 231. The added phrase "during the term of said patents," we view not as necessarily carrying to the end of the term of the patents, but as merely stating the maximum limit of continuation. This we think is the only construction left possible by the combination of the phrase "from year to year."

The appellant refers to several cases in which, in the absence of stipulations to the contrary, licenses have been held to run to the end of the terms of patents. *St. Paul Plow Works v. Starling,* 140 U. S. 184; *Birdsell v. Shaliol,* 112 U. S. 485; *Edison Light Co. v. Peninsula Light Co.,* 95 Fed. 459; *Sproull v. Pratt & Whitney Co.,* 108 Fed. 963; *Amer. Street Car Adv. Co. v. Jones,* 122 Fed. 803; *Walker, Patents,* sec. 308; *Hopkins, Patents,* sec. 301. And the arrangement for continuation during the full term seems to be a common one. But we find those cases inapplicable to

this problem. Here the owner has inserted the stipulation which is contrary to continuation without a right of termination during the full term. And the parties were, of course, free to make whatever terms they pleased.

We have been supplied with a copy of a decision in New York, in an unreported case (*Brown, Receiver, v. Paris*), in which the plaintiff's construction of this contract was adopted, but we have not been able to reach the same result. The reasoning of the New York court is not stated.

The appellant contends, further, that if the continuation of the lease is found to be only periodic, from year to year, with a right in the licensees to prevent continuation into any additional year, then that right must be dependent upon their giving the licensor notice of their election and termination previous to the beginning of the additional year. The letter written by the licensees on December 31st, 1924, would, we think, be a notice of their intention to terminate, but it is to be assumed that it did not reach the licensor in New York until the next day, which was the first day of the new year. *Aetna Indem. Co. v. Fuller Co.,* 111 Md. 321. It was not, therefore, a previous notice.

The requirement of previous notice for the termination of a tenancy of land from year to year is referred to for an analogy, but that requirement is a response to demands of convenience arising on a change in the occupancy of land, and does not furnish a rule for a transaction in which the same demands do not arise. *Hall v. Myers,* 43 Md. 446; *Right v. Darby,* 1 Term Rep. 162; *Goodright v. Richardson,* 3 Term Rep. 462, 464; *Doe v. Spence,* 6 East 120, 123; Coleridge, J., in *Ryan v. Jenkinson,* 25 L. J. Q. B. N. S. 11; *Beeston v. Collyer,* 4 Bing. 309. There is no tangible property concerned here to be redelivered and newly disposed of; there is only a license to use on the licensees' own goods a patented method or device.

There is no stipulation in the contract for the giving of notice, and no suggestion is made that any need of readjust-

ment by the licensor or any considerations of its convenience might require previous notice to it. Therefore, there is no foundation for a requirement of notice of any length of time, or, indeed, of any previous notice at all, unless previous notice is a necessary element in a termination of the relation upon the election of one party, that is, unless termination by one necessarily includes notification of the other.

We think it clear that, under such a contract for periodic continuation as we find this one to be, a license year once begun runs to its end, and that the license enters upon a new year unless it is stopped before that year at the election of one party. Whatever it was necessary to do to make that stopping complete and effective, it was, therefore, necessary to do on or before December 31st of the earlier year. The question whether there can be a complete and effective termination of a relation at the election of one party without notification of the other, has been a subject of some debate. *Ewart, Waiver Distributed,* 88 to 95. But it seems to us that termination at least involves setting the other party free of its obligation, and that this cannot be regarded as accomplished unless and until that other party is notified of it. Conceivably the other party might be legally free without knowing it, but its freedom would seem to be something less than practical men would intend in a contract giving one a right to terminate their relation at his election.

The difference of one day in the giving of notice is small, in one view, but it is the distance across a necessary boundary in relations under the contract, and must be taken as decisive, or there can be no boundary. If a license continuing periodically by calendar years can be prevented from running on for a full new year only by termination before the year begins, the limit for the terminating notice can be drawn only between December 31st and January 1st. There could be no other limit. And the distinction between one side and the other of that boundary must be adhered to, or there can be no such requirement at all. Our conclusion

is that in this case termination of the license at the end of the year 1924 did necessarily involve notification of the licensor, and as the license was started upon another year, the licensees became liable for the license fee for that year. In this view, it was erroneous to direct a verdict for the defendant in a suit for that fee.

*Judgment reversed, and a new trial awarded, with costs to the appellant.*