## Central Guarantee Company, Appellant, *v.* Union National Bank.

*Contracts—Option to cancel—Time.*

A contract for a subscription to a bank directory, entered into April 21, 1922, for five years, subject to cancellation by defendant "at the end of the first year," contained the provision that "subscription commences 7-1-22" and "subscription ends 7-1-27." The end of the first subscription year was July 1st and that date and not the year following the execution of the contract controlled.

An attempt to cancel the contract on July 11, 1923, was too late. The privilege to cancel was written into the contract for the benefit of defendant and it was its duty to give plaintiff notice of its intention to exercise it on or before July 1, 1923, which was the day which the contract fixed as the end of the first subscription year. Time was the essence in the provision of the contract as to the right of defendant to cancel, and the question whether the notice of cancellation was given within a reasonable time was not involved.

Argued October 12, 1927. Appeal No. 83, October T., 1927, by plaintiff from final order of M. C. Philadelphia, September T., 1926, No. 64, in the case of Central Guarantee Company v. Union National Bank.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.  Reversed.

Assumpsit to recover upon a contract for the subscription to the Bank Directory.   Before BONNIWELL, J.

The facts are stated in the opinion of the Superior Court.

Rule for judgment for want of a sufficient affidavit of defense.  The Court discharged the rule.  Plaintiff appealed.

*Error assigned* was the judgment of the Court.

*Albert S. Longbottom,* of *Byron, Longbottom, Pape & O'Brien,* for appellant.—The notice to cancel contract, given after the date specified by the contract, was too late: Zineman v. Harris, 6 Pa. Superior Ct. 303; Central Guarantee Co. v. Farmers' Mechanics' National Bank, 241 S. W. 600.

*John Arthur Brown,* and with him *Henry P. Brown,* for appellee.—July 1, 1923, was the end of the first year and notice of cancellation given July 11th, being within a reasonable time thereafter, was sufficient to terminate the contract: The Queen v. Commissioners for Special Purposes of the Income Tax, 21 Law Reports, Queen's Bench Division, 313-317 (1888) ; Brown v. Anderson, 77 Calif. Reports 236.

OPINION BY GAWTHROP, J., December 15, 1927:

This is an appeal by plaintiff from an order discharging a rule for judgment for want of a sufficient affidavit of defense.  The statement of claim averred that plaintiff is the publisher of a certain "Bank Directory and List of Guaranteed Attorneys;" that on April 21, 1922, it entered into the following written contract with defendant:—

"Original

City of Philadelphia, Pa.
4-21-22

Central Guarantee Company
Fifth Avenue Bldg., New York City, N. Y.

Please send to our address for five years Special Mercantile Edition of

The Merchants' Bank Directory

and list of Guaranteed Attorneys for which we will pay the sum of $300.00 dollars per year on receipt of first copy following date of contract, and annually thereafter.

Subscription commences 7-1-22
Subscription ends 7-1-27

Name

Union National Bank
Philadelphia, Pa.

Including name of bank, name of officers, capital, surplus, and undivided profits and deposits. This bank to have sole representation in this city.

(sgd) H. B. Reinhardt
Vice President.

In Special Mercantile Edition

Privilege to cancel at the end of the first year by this bank;"


that pursuant to the terms of this contract plaintiff on or about the first day of July of each year from 1922 to 1926, inclusive, forwarded to defendant a copy of the then current issue of the directory, containing the data concerning defendant and that plaintiff paid only the sum of $300 covering the issue of July 1, 1922. The claim is for the amount of the last four annual

installments of $300, with interest on each from the date it was due.

The affidavit of defense admits the execution of the contract and the receipt by defendant of the then current issue of the directory on or about the first day of July of each year, but avers that the bank cancelled the contract by a letter of July 11, 1923, stating, inter alia,

"We note the contract signed by Mr. Reinhardt carries the privilege to cancel the same at the end of the 1st year, and we hereby advise you of our desire to cancel the same and we are returning to you the copy of the directory under separate cover;"
that plaintiff received this notice of cancellation of the contract; and that the inclusion of the data as to defendant in the issues after July 1, 1923, were in spite of its objections.

The question raised by the pleadings and presented to the court below and to us is whether or not the notice given by the bank July 11, 1923, was an effective exercise of the bank's privilege "to cancel (the contract) at the end of the first year."

The first contention of appellant is that the contract was for five years from the date of its execution, April 21, 1922; that the end of the first year was April 21, 1923; and that if the bank desired to cancel the contract at the end of the first year it was bound to give notice before April 21, 1923. As a reason for such a construction it is urged that the delivery of an issue of the directory on July 1st required the preparation and printing before that date; and that unless the bank gave notice of cancellation before the directory for the second year was printed it would get the benefit of two years' subscription for one year's payment. The objection to such a construction of the contract is that it does violence to the provision thereof that the "subscription commences 7-1-22" and "subscription ends 7-1-27." Manifestly, the year referred to in the

provision for cancellation ''at the end of the first year'' is the first subscription year, and not the year following the. date of the contract. It follows that the bank was not required to exercise its option of cancelling the contract until the end of the first subscription year.

This brings us to the question whether the notice of cancellation by the bank on July 11, 1923, was in time. The answer hinges upon what the parties meant by the words ''at the end of the first year.'' The able counsel for appellee urges that in the circumstances they mean neither the very moment when the first year ended, nor the day on which it ended, but that in the light of the subject matter of the contract they mean within a reasonable time after the end of the year. Queen v. Commissioners for Special Purposes of the Income Tax 21 Law Reports, Queen's Bench Division, 313-317, is cited to sustain this contention. The decision in that case involved the construction of a statute giving to one making an overpayment of income tax the right to apply for repayment ''within or at the end of the year'' of assessment. We think the decision is against appellee rather than for it, for in construing the words ''at the end of the year,'' the court said: ''I think the proper construction of them is that they mean that the overpayment must be found out and proved in as short a time after the end of the year as is possible in the particular case with exertion on the part of the person claiming repayment. I will not say that the statute simply means within a reasonable time after the end of the year. I think it must be the shortest time in which it could be done if every exertion was made that ought to be made. If a person makes delay in examining into his affairs so as to exceed this time, though such delay may not be unreasonable, still I think he would be too late. His case would not, in my opinion, come within the meaning of the words 'at the end of the year' as used in the section ......The question whether the party claiming has so

satisfied the terms of the section must be the subject of inquiry with reference to the particular circumstances in each case.'' The case at bar is not one involving the question whether a party has satisfied the terms of a statute, but one requiring the construction of a contract which gave to one of the parties the valuable privilege of relieving itself of further performance thereof, if it exercised its right to do so at a time named. The fact that appellant must have known when it drew the contract that the issue of the directory which was to be delivered on the first day of July, 1923, would be printed and bound before that day would be a reason why it should have provided that the cancellation should be exercised at an earlier date, but it furnishes no excuse for appellee's failure to cancel on or before July 1, 1923. The privilege to cancel was written into the contract for the benefit of appellee and it was its duty to give appellant notice of its intention to exercise it on or before July 1, 1923, which was the day which the contract fixed as the end of the first subscription year. This conclusion is in harmony with the decision of the Court of Civil Appeals of Texas, in Central Guarantee Co. v. Farmers' & Mechanics' National Bank, 241 S. W. 600, in which the same form of contract was construed. We are of opinion that time was the essence in the provision of the contract as to the right of appellee to cancel, and that the question whether the notice of cancellation was given within a reasonable time is not involved in this case.

The judgment is reversed, and the record remitted with directions to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court below why such judgment should not be so entered.