Music, Inc., Appellant, v. Henry B. Klein Co.

Argued April 9, 1968.  Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (HANNUM, J., absent).

*Henry W. Wallace,* with him *Donald E. Rohall,* for appellant.

*Samuel J. Reich,* with him *H. Arnold Gefsky,* and *Cooper, Goodman & Schwartz,* for appellee.

OPINION BY SPAULDING, J., September 12, 1968:

This is an appeal from a judgment entered in favor of Henry B. Klein Co., defendant-appellee, in an assumpsit action in Allegheny County Court.

Music, Inc., appellant, which provides a programmed music service commonly known as "Musak,"

contracted with appellee to provide such service from April 1, 1963 to November 30, 1966. The contract in part provided: "The term of this agreement shall be for three (3) years and eight (8) months from the date of installation and shall continue thereafter for subsequent like periods unless at least *(60) sixty days* prior to the end of any term either party shall give the other written notice of desire to discontinue said service at the end of the current term." In an attempt to end the contract, appellee wrote a letter of termination which was posted on Friday, September 30, 1966, sixty-one days prior to the termination date of November 30. This notice, which was clear and unambiguous, was received by appellant on Monday, October 3, 1966, fifty-eight days before the termination date.

The sole question on this appeal is whether effective termination notice was given pursuant to the terms of the contract and the intent of the parties. The trial court, in an action by appellant for the additional monthly payments due under the extended contract, rendered judgment for the appellee, concluding "that the notice given by the defendant was adequate under the contract."[1]

There was no specific provision in the contract making time of the essence and no circumstances have been demonstrated which clearly indicate that both parties intended that time should be of the essence. In *Central Guarantee Co. v. Nat'l Bank,* 137 Wash. 24, 241 Pac. 285 (1925), the court held that under a clause in a subscription contract covering a series of 5 years giving the subscriber the privilege to cancel "at the end of the first year," his right to act arises at the termination of the year, so that he must be given a reasonable time thereafter to signify his cancellation,

---

[1] Unreported opinion of the County Court of Allegheny County, filed February 7, 1968 at No. 595 of 1967.

and that such action within 10 days after the stipulated period expires was reasonable. Several other courts have approved a rule of construction which permits a finding that a termination notice is sufficient even though delivered later than the period specified in the contract when the terminating party acted reasonably under the circumstances and there is no demonstrable prejudice resulting from the delayed notice. Those courts found, however, as a matter of law, that the notice in those cases was not given within a reasonable time after that permitted by the contract, and therefore held the termination notice legally insufficient.[2]

This question, which appears to be one of first impression in Pennsylvania appellate courts, clearly provides a case demanding the application of the above approach. There was, according to uncontradicted evidence, a telephone call one day before the 60 day period, from appellee to appellant to the effect that appellee wished to discontinue the service;[3] actual receipt of the notice occurred on the first business day within that 60 day period; and, finally, appellant can demon-

---

[2] See, e.g., *Mayhew v. Vanway*, 371 S.W. 2d 90 (Ct. Civ. App., Tex., 1963) (notice after 4 years found unreasonable where contract provided for 2 year period within which termination might be effected) ; *Bennett's, Inc. v. Krogh*, 115 Col. 18, 168 P. 2d 554 (1946) (20 months notice unreasonable in face of 6 months contract provision).

There is also a question as to whether the issue of reasonableness is to be submitted to the trier of fact or ruled on as a matter of law. We need not reach that determination in the instant case since, once we establish that reasonableness is a relevant determination, it is apparent that a finding that notice in the case at bar was unreasonable would have to be reversed as a matter of law.

[3] The position has also been taken that the notice may be verbal even though the contract calls for written notice. *Cooper-smith v. Isherwood*, 219 Md. 455, 150 A. 2d 243 (1959).

strate no prejudice stemming from the short delay in its receipt of the belated termination notice.[4] We can see no reason to disturb the conclusion of the court below that there was nothing "in the nature of the transaction or the subject matter of the contract that would justify treating this contract as one making time of the essence. Plainly, the contract provision here was merely indicative of the parties' intention, when contracting, that ample notice be given of any cancellation." Absent a showing that appellant was damaged in any way by receipt of the termination notice on October 3rd, or that it changed its position to its detriment, it would be unconscionable to hold appellee to an additional contract of three years and eight months. Under the circumstances of this case we hold that notice of cancellation received on the first business day after that literally required by the contract was adequate to effect a termination of the contract.[5]

-Judgment affirmed.

MONTGOMERY, J., concurs in the result.

---

DISSENTING OPINION BY HOFFMAN, J.:

The majority holds that time is not of the essence when a contract requires that notice of termination be

---

[4] Indeed, were it necessary, we would hold alternatively that notice on the first *business* day of the contract period satisfies the contract even under a strict construction. See *Berg Co. v. Thomas & Son Co.*, 256 Pa. 584, 100 Atl. 951 (1917). To the extent that *Central Guarantee Co. v. Union Nat'l Bank*, 92 Pa. Superior Ct. 70 (1927), derogates from this opinion in that it makes time of the essence as a matter of law in such contracts, that opinion is overruled.

[5] This case is to be distinguished from strict construction given renewal clauses in leases, for the availability of equitable relief in those cases establishes prejudice as a matter of law. Trickett, Landlord and Tenant (Stern 3rd ed., 1950), 12. But see *American Houses v. Schneider*, 211 F. 2d 881 (3d. Cir., 1954).

submitted "at least (60) sixty days prior" to the expiration date.

This holding disregards the clear meaning of the contract language and the intent of the parties. In addition, it is not in accordance with the decided cases in other jurisdictions. *Wheeler v. McStay*, 141 N.W. 404 (S. Ct. of Iowa 1913); *Fred Mosher Grain v. Kansas Co-op Wheat Market. Ass'n*, 136 Kan. 269, 15 P. 2d 421 (1932); *Brown Method Co. v. Ginsberg*, 153 Md. 414, 138 Atl. 402 (1927). See 5 A Corbin, Contracts §1177 (1964); 6 Corbin, Contracts §1266 (1962); 5 Page, Contracts §2598 (1921); Trickett, Landlord and Tenant, 328 (Stern 3rd ed., 1950).

The contract in the instant case provided for automatic renewal unless the defendant gave written notice of termination "at least (60) sixty days prior" to the expiration date. Such language is clear and unequivocal on its face. The insertion of a magical formula, "time is of the essence," should not be necessary, therefore, to give effect to this language. Rather, I agree with Corbin's statement that "a provision that a contract may be terminated at one or more specified dates by giving 30 days notice requires that the notice be given 30 days before one of those dates; *and time is of the essence.*" (Emphasis added) 6 Corbin, Contracts §1266 (1962).

The time limitation for cancellation was included in the contract for the benefit of both plaintiff and defendant. It was designed to assure that each would have no less than sixty days to seek other contracts in the event of cancellation. The clause in question "should be so construed as to preserve that benefit, if it be possible to do so." *Stetler v. North Branch Co.*, 258 Pa. 299 at 301, 101 Atl. 980 at 981 (1917). To allow the defendant to expand the time limitation, in and of itself reasonable, by an additional reason-

able period of time would give it something for which it did not bargain.

Moreover, the doctrine that time is not of the essence is inapplicable in the instant case. As Corbin has indicated, the law will infer that time is not of the essence in order to avoid a heavy penalty or a forfeiture. 5 A Corbin, Contracts, §1177 (1964). But no forfeiture or penalty results here if it is held that the termination notice as given is ineffective. The defendant would still be entitled in the future to whatever benefits were conferred upon him by the contract. While defendant may have determined that these benefits were of little or no value to him, he can no more seek to avoid the clear obligations of the second term of his contract than if he had discovered this fact immediately after the commencement of the initial term of the contract.

Furthermore, the defendant was not faced with any hardship which interfered with the timely exercise of his right to terminate the contract. At any time prior to the last sixty (60) days of the initial contract term of three years and eight months the contract could have been cancelled. His delay was voluntary as well as imprudent.

The majority's reliance on *Central Guarantee Co. v. National Bank,* 137 Wash. 24, 241 Pac. 285 (1925), is misplaced. There, the clause in question gave the subscriber the privilege to cancel "at the end of the first year." This was interpreted by that Court to mean that the right to cancel arose only at the end of the year and was not available during the course of the year. Indeed, that Court found this clearly distinguishable from the instant situation where the defendant could have cancelled at any point prior to a specified time before the renewal date. The Washington Court stated: "Most certainly, the ordinary person, a person not versed in the technical lore of the law,

would understand that a right granted to be exercised 'within one year' would expire with the expiration of the year, while he would equally understand that a right granted to be exercised 'at the end of one year' arose at the expiration of the year. Stated in another way, he would understand from the first impression that the end of the year marked the expiration of the granted right, while he would understand from the latter that it marked its beginnings."

As an alternative ground for the decision, the majority, in a footnote, indicates that notice was timely given because the sixtieth day prior to the renewal date was a Saturday and notice was received the next business day, a Monday. Such an allowance should not be made where, as here, the party giving notice has had ample opportunity to comply in all respects with the literal requirements of the contract clause. Nothing prevented the defendant from having notice arrive on the sixtieth day, because the mails are delivered on Saturday, and whether plaintiff did business on Saturday was not its concern. In *Berg Co. v. Thomas & Son Co.*, 256 Pa. 584, 100 Atl. 951 (1917), cited by the majority, notice was required to be given on a date which happened to be a Sunday, and no other date was specified. But it was also anticipated that notice would be sent by mail. As mail deliveries were not made on Sunday, the court indicated that Monday must have been acceptable to the parties. Otherwise notification could not be made in the manner the parties anticipated. Here, however, delivery of such notice by mail could have been made on the sixtieth day in accordance with the specific terms of the contract and the anticipation of the parties.

Plaintiff is entitled to its lost profits for the renewal term of three years and eight months. The lost revenue is $45.00 a month for the entire contract term, but the record is unclear as to its costs. I would,

therefore, remand the case to the lower court with instructions to ascertain plaintiff's lost profits and award judgment accordingly.

WATKINS, J., joins in this dissenting opinion.