The ASSOCIATED PRESS, Plaintiff and Appellee,

v.

HEART OF the BLACK HILLS STA-TIONS, INCORPORATED, Eli Daniels and Harry Daniels, Defendants and Appellants.

No. 13221.

Supreme Court of South Dakota.

Argued April 23, 1981.

Decided Oct. 6, 1982.

Ann C. Jones of Banks & Johnson, A Professional Corp., Rapid City, for plaintiff and appellee.

David J. Stanton, Rapid City, for defendants and appellants.

HOYT, Circuit Judge.

## CASE SUMMARY

This is an appeal from a judgment entered by the Seventh Judicial Circuit Court of the State of South Dakota pursuant to a jury verdict in favor of appellee in the amount of $10,541.98 plus interest representing uncollected future anticipated revenue and assessments due and owing to the

appellee for services rendered prior to the breach of a newswire service agreement between the parties for the benefit of radio station KDSJ in Deadwood, South Dakota. Also on appeal is a judgment notwithstanding the verdict entered by the trial judge pursuant to a motion by appellee for $1,210.52 plus interest representing assessments due and owing to appellee for services rendered prior to the breach of a second wire service agreement between the parties for the benefit of radio and TV station KRSD in Rapid City, South Dakota. We affirm.

## FACTS

Appellants, Harry and Eli Daniels, d/b/a as Heart of the Black Hills Stations, Inc., owners and operators of stations KDSJ and KRSD, entered into two separate contracts on October 23, 1972 with appellee, Associated Press News Services.

The purpose of the first contract, hereinafter referred to as the "KDSJ contract," was to provide radio station KDSJ in Deadwood, South Dakota, with newswire service. Appellee was to provide this service in consideration for a weekly assessment of $66.20 unless such assessments were increased during the term the agreement by appellee's board of directors as provided in its bylaws. According to the terms of the agreement, the effective date of the contract was to be July 4, 1974, or the first date upon which service was rendered by appellee, whichever occurred earlier. The contract was to run for a period of three years and five weeks and was to be automatically renewed for an additional term of five years unless either party gave written notice to the other by certified mail not less than six months prior to the end of the term of the agreement if such termination was desired.

Actual service was begun on January 5, 1974, as alleged by appellee in its complaint and as admitted by appellants in their answer. Appellee received a letter dated September 7, 1976, from one of the appellants requesting that service to KDSJ be discontinued. Appellee declined to accept notice

of such cancellation because the notice was given one month and one day past the six month notice requirement provided for in the contract. As a consequence, appellee considered the KRSD contract automatically renewed for five years pursuant to the terms of their contract to terminate February 8, 1982. However, service was discontinued on January 4, 1978, pursuant to a contractual provision which gave appellee the right to discontinue service upon nonpayment by appellant.

The jury returned a verdict in favor of appellee for $2,217.81, consisting of unpaid assessments from July 3, 1977, through December 31, 1977, at the weekly rate of $83.35, and of unpaid assessments from January 1, 1978, through January 4, 1978, at the weekly rate of $88.75, the increased rates approved by appellee's board of directors pursuant to the authority given to it under appellee's by-laws, which by-laws were incorporated in the terms of the contract between the parties. The jury also awarded appellee $8,324.17 plus interest, the amount representing lost future revenue from January 5, 1978, through February 8, 1982, at $88.75 per week less unincurred expenses saved by appellee due to the discontinuance of service.

The purpose of the second contract, hereinafter referred to as "KRSD contract," was to provide radio and television station KRSD in Rapid City, South Dakota, with newswire service. Service began on January 5, 1974, and was terminated pursuant to the terms of the contract on February 29, 1976, when the Federal Communications Commission denied a renewal of license to KRSD. Evidence was presented by both parties concerning the assessments for service from January 5, 1974, until termination, appellee claiming that $1,210.52 was due and owing on the account. The jury returned a verdict in favor of appellants, indicating that no amount was due and owing to appellee. Appellee moved for and was granted a judgment notwithstanding the verdict in the amount of $1,210.52.

At all times prior to and during the trial, South Dakota law was urged and applied by both parties.

## ISSUES

Appellants present five issues on appeal, the first four of which concern themselves with the KDSJ contract.

Appellants' first issue is whether a question concerning the possible applicability of the law of New York may be raised on appeal even though appellants did not offer evidence of such applicability at the trial level, in the light of the fact that appellee is a resident of the State of New York, thus having easy accessability to New York law. If this Court holds that New York law may not be raised at the appellate stage, appellants raise as the second issue the question whether the automatic renewal provision of the contract between the parties is an unreasonable method of calculating damages and is thus void and unenforceable as a penalty under South Dakota law. Also presented by appellants is the issue whether the trial court erred in its instruction to the jury that the KDSJ contract commenced on January 5, 1974, as a matter of law, when appellee so stated in its complaint and appellants merely admitted in their answer that the services were initially provided by appellee on that date, but did not specifically admit that the contract began to run on that date. If, arguendo, the contract did commence on January 5, 1974, as a matter of law, the final issue urged by appellants concerning the KDSJ contract is whether the notice given to appellee on September 7, 1976, was substantially in compliance with the six month notice requirement set forth in the contract, in that such notice was given approximately five months prior to the expiration of the contract, and in that, it is contended, appellee did not suffer any damages because of the late notice. The fifth and final issue concerns itself with the KRSD contract. This issue is whether the trial court erred in granting appellee's motion for judgment notwithstanding the verdict concerning the alleged assessments due and owing to appellee under the contract for the period of time between January 5, 1974, when service was initiated, and February 29, 1976, when service was terminated.

## DECISION

Appellants argue that New York statutory law should have been applied in this case, in that the agreement between the parties specifically states that the contract was made in New York and, in that under the South Dakota conflict of law rule, the law of the place where the contract is made is the law which must be applied. Appellants ask that we rule on the issue of such applicability even though appellants did not offer any evidence of such applicability at the trial level, and to hold appellee on notice to all New York law, merely because it is a resident of the state of New York.

In 1937, South Dakota adopted the Uniform Judicial Notice of Foreign Law Act, now found in SDCL ch. 19–8. SDCL 19–8–4 provides:

> Any party may also present to the trial court any admissible evidence of the laws referred to in § 19–8–1, but, to enable a party to offer evidence of the law in another jurisdiction or to ask that judicial notice be taken thereof, reasonable notice shall be given to the adverse parties either in the pleadings or otherwise.

In the instant case, appellants failed to give any notice of the possible applicability of New York law until briefs were submitted on appeal. It is elementary that the raising of such an issue at the appellate level does not constitute the reasonable notice requirement set forth in SDCL 19–8–4. Therefore, we hold that appellants' contention concerning this matter was not timely raised, and thus is not properly before us. Likewise with respect to appellants' argument that appellee should be held to notice of all New York law merely because it is a resident of New York.

Appellants further contend that if New York law may not be applied at this stage of the proceedings, then to allow the automatic five-year renewal provision in the KDSJ contract to take effect would constitute a penalty, thus making the agreement void and unenforceable under South Dakota law. This Court stated in *Walter Motor Truck Co. v. State,* 292 N.W.2d 321, 323 (S.D.1980):

A provision for payment of a stipulated sum as a liquidation of damages will ordinarily be sustained if it appears (1) that at the time the contract was made the damages in the event of a breach were incapable or very difficult of accurate estimation; (2) that there was a reasonable endeavor by the parties as stated to fix fair compensation; and (3) that the amount stipulated bears a reasonable relation to probable damages and is not disproportionate to any damages reasonably to be anticipated. *Anderson v. Cactus Heights Country Club,* 80 S.D. 417, 125 N.W.2d 491 (1963).

■ It can be readily discerned that the contractual clause in the instant case does not fall under the category of a liquidated damage clause in that actual damages were not difficult to impossible for the parties to estimate at the onset of the agreement. Damages to appellee in the case of breach could easily be ascertained as the lost anticipated future profits which would have been forthcoming to appellee but for appellants' breach. The only issue in this case as to damages is whether those damages provided for under the parties' agreement are compensable damages under South Dakota Law. See SDCL 21–2–1.* We conclude that the five-year renewal provision is reasonable and does compensate appellee for proximately caused damages in case of breach. Appellee presented ample testimony at trial that the breach of any of its contracts causes it substantial damage in that it operates on a break-even budget, with anticipated profits being a very important aspect of its budgetary calculations. To allow appellee to recover its anticipated future profits, then, is to allow it to recover those monies which it would have received if appellants had not breached the terms as set forth in the agreement.

■ A third issue raised by appellants is whether the trial court erred in its instruction to the jury that the KDSJ contract commenced on January 5, 1974, as a matter of law. Appellee stated in its complaint that it "... began to provide news service to Defendant for broadcast over Radio Station, KDSJ, on January 5, 1974 ..." Appellants responded to this allegation in the affirmative in its answer. It is a fundamental principle of American jurisprudence that when the opposing party responds in the affirmative to a party's allegation, the response becomes an admission to that allegation as a matter of law. In view of the fact that the KDSJ contract states that the agreement between the parties will become effective on "... July 4, 1974 or the first date upon which AP actually provides the Service to the Member," and in the light of appellants' admission that appellee began to provide KDSJ with news service on January 5, 1974, the trial court did not err in holding that the contract between the parties commenced on January 5, 1974.

■ The final issue raised by appellants concerning the KDSJ contract is whether the notice given to appellee on September 7, 1976, was substantially in compliance with the six month notice requirement provided for in the agreement, inasmuch as such notice was given approximately five months prior to the expiration date of the contract and inasmuch as, it is contended, no detriment was suffered by appellee because of the late notice. The only case in which this Court has addressed the issue of sufficiency of notice of cancellation is *Standard Pub. Corporation v. Mitchell Pub. Co.,* 59 S.D. 552, 241 N.W. 520 (1932). In *Standard Publishing* the parties entered into an agreement whereby the plaintiff would render specialized services to the defendant for a yearly sum certain. In the contract it was stipulated that the agreement would continue for each succeeding contract year unless

---

* SDCL 21–2–1 provides:

For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and their origin.

a written cancellation notice was received by either party sixty days prior to the expiration date. Defendant gave such notice forty-two days before the time of expiration. This Court held that as a matter of law the notice was insufficient compliance with the terms of the contract.

Appellants rely very heavily on a Pennsylvania case, *Music, Inc. v. Henry B. Klein Co.,* 213 Pa.Super. 182, 245 A.2d 650 (1968). This case involved a contract for a term of three years and eight months, with a renewal for a like term unless notice of termination was given at least sixty days prior to the end of the term. The appellee called appellant one day prior to the sixty-day period and the appellant received written notice on the fifty-eighth day, the first business day after the sixty-day period had terminated. Because there was no showing of detriment suffered by the appellant because of the late notice, the court held in favor of the appellee, that case, however, is inapposite to the case at hand. In the instant case, as has previously been discussed, appellee did suffer substantial detriment because of appellants' late notice; moreover, the notice in the instant case was given much later in time than the notice in *Music, Inc.,* supra. Therefore, we hold that under the circumstances, the notice given by appellants was insufficient as a matter of law.

The fifth and final issue presented by appellants concerns the KSRD contract. The question is whether the trial court erred in granting appellee's motion for judgment notwithstanding the verdict concerning the alleged assessments due and owing to appellee under the contract for the period of time when service was initiated until the time of termination of its license. In *Ebert v. Fort Pierre Moose Lodge # 1813,* 312 N.W.2d 119 (S.D.1981), this Court held that the trial court is required to base its judgment on the verdict of the jury, unless it finds that such verdict is inherently erroneous. In *Lukens v. Zavadil,* 281 N.W.2d 78 (S.D.1979), this Court held that when reviewing a judgment notwithstanding the verdict, it must view the evidence in the light most favorable to the jury verdict, giving the prevailing party the benefit of every inference and resolving in its favor every controverted fact. In the instant case, there were no controverted facts. Both appellee and appellants brought forth evidence indicating that the amount of $1,210.52 was due and owing to appellee at the time of expiration of appellants' license to operate KSRD. Therefore, the verdict of the jury was inherently erroneous and the trial judge did not err in granting appellee's motion for judgment notwithstanding the verdict.

The judgment is affirmed.

All the Justices concur.

HOYT, Circuit Judge, sitting for HENDERSON, J., disqualified.