**EASTERN MILK PRODUCERS COOPERATIVE ASSOCIATION, INC.**

v.

**LEHIGH VALLEY COOPERATIVE FARMERS, Lehigh Valley Farmers, Inc. and Atlantic Processing, Inc.**

Civ. A. No. 81–1424.

United States District Court,
E.D. Pennsylvania.

Aug. 18, 1983.

Peter N. Wells, Syracuse, N.Y., Henry B. Fitzpatrick, Jr., Philadelphia, Pa., for plaintiff.

Thomas C. Sadler, Jr., Allentown, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

The critical facts in this contract action are not in dispute. In mid-March 1980, plaintiff, Eastern Milk Producers Cooperative Association, Inc., (Eastern) entered into a contract with defendant, Lehigh Valley Cooperative Farmers (Lehigh Valley). The duration of this agreement was limited to one year. It commenced on April 1, 1980, and terminated on March 31, 1981. Eastern, under the terms of the contract, agreed to sell specified quantities of milk to Lehigh Valley. The contract contained an automatic renewal clause which required either party to give written notice of termination at least sixty days before the March 31, 1981, expiration date. Absent such a written notice to terminate, the contract would automatically renew itself for another year.

In June 1980, a few months after the agreement was entered into, defendant, Atlantic Processing, Inc. (API), purchased

specified assets of co-defendant Lehigh Valley. At that time, the president of API wrote to and assured Eastern that the acquisition of Lehigh Valley by API would have "no effect on the business which we conduct with you".

API is organized as a federated agricultural corporation and has tax-exempt status with the Internal Revenue Service. In order to maintain this tax status, a certain percentage of the milk which API markets must be member-produced. Several unsuccessful efforts were made to persuade Eastern to join API.

On January 28, 1981, during the course of these negotiations, API's vice-president wrote to Eastern that

> We will continue to honor our contracts; however, I am under pressure to resolve this matter as soon as possible; and since two of our major contracts expire on April 1, I think we should set a deadline to get this accomplished no later than that date.

On March 12, 1981, only three weeks before the original contract expired, API instructed Eastern to reduce its milk production to the six million pound level by April 6, 1981. Six days later Eastern responded. Eastern told API that it, API, had failed to send a timely written notice of cancellation and that Eastern intended to hold API to its obligation to purchase Eastern-produced milk. Shortly thereafter, on March 31, 1981, API notified Eastern that, effective immediately, API would refuse to accept any milk from Eastern.

Eastern, moving for summary judgment as to liability, argues that API, as successor to Lehigh Valley's contract rights, never communicated an effective notice to terminate the contract within the sixty-day period. Hence, Eastern argues that the contract was automatically renewed for one year and that API's refusal to accept milk after March 31, 1981, is a breach.

Defendants, cross-moving for summary judgment, argue that API's letter of January 28, 1981, informed Eastern that the contract would not be renewed. They accordingly argue that API's refusal to accept

Eastern's milk after March 31, 1981, was permissible. Alternatively, defendants assert that timely oral representations which they made to Eastern satisfied their contractual obligation to give sixty days' notice. We consider these contentions against the backdrop of Pennsylvania law. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ *Maloney v. Madrid Motor Corp.,* 385 Pa. 224, 228, 122 A.2d 694 (1956), held that notice to terminate a contract must be "clear and unambiguous". Ambiguous conduct and language intended to signal contract termination "will be deemed not to have terminated the contract". Applying this "general rule", *id., Maloney* concluded that an effective notice to terminate was unambiguously given by an employer who advised that "we do not wish to continue this agreement, in the future, when it expires next September". The notice to terminate in *Maloney* also extended an offer of future employment and concluded that the letter was being sent "merely [as] a notice as called for [in] the agreement ... we do not wish to renew it". *Maloney v. Madrid Motor Corp.,* 385 Pa. at 226, 122 A.2d 694.

■ Eastern places primary reliance upon *Maloney* and argues that API's January 28 letter, quoted above, was neither a clear nor an unambiguous expression of a notice to terminate. Specifically, Eastern focuses upon the first clause of the referenced paragraph which states that API "will continue to honor its contracts ...". Presumably, this commitment by API to honor its contracts affirmed its existing obligation to give a proper and timely notice of termination.

Defendants, on the other hand, place emphasis upon the remainder of the quoted paragraph which evidences that API is "under pressure" and that an April 1, 1981, target deadline should be established to "resolve this matter". Defendants believe that these portions of the January 28 letter demonstrate that, as in *Maloney,* API was dis-

satisfied with the contract and sought to negotiate a new one. We disagree.

The notice to terminate in *Maloney* stated without ambiguity that the terminating party did "not wish to continue this agreement". 385 Pa. at 226. Here, by contrast, API stated that "we will continue to honor our contracts". True, as in *Maloney,* API sought to adjust the terms of the contract; however, unlike *Maloney,* API never gave "notice as called for under the agreement".[1] *Maloney v. Madrid Motor Corp.,* 385 Pa. at 226, 122 A.2d 694.

*Efco Importers v. Halsobrunn,* 500 F.Supp. 152 (E.D.Pa.1980), sheds no light upon the issue at bar. In *Efco Importers,* plaintiff admitted that it had received a clear and unambiguous notice of cancellation. *See, id.,* at 154 and 155, citing ¶ 9 of plaintiff's complaint. Nevertheless, plaintiff in *Efco Importers* argued that defendant's conduct subsequent to sending the notice evidenced an intent to renew the contract. Judge Lord disagreed and held that "*assuming* communication of a clear notice to terminate", post-termination conduct identical to pre-termination conduct is insufficient to support a renewal of the contract. *Efco Importers v. Halsobrunn,* 500 F.Supp. at 156 (emphasis added).

Here, the January 28 letter evidences API's ambivalence with respect to continuing its relationship with Eastern. On one hand, API stated that it would honor its contract and affirmed its obligation to provide proper, timely notice. On the other hand, API expressed a desire to alter the contract and hoped that this could be accomplished by April 1, 1981.

These conflicting signals which API sent Eastern are not clear and unambiguous. They are not compelling. API failed to clearly communicate its apparent desire to terminate the contract with Eastern.

Defendants' reliance upon *Music, Inc. v. Henry B. Klein Co.,* 213 Pa.Super. 182, 184, 245 A.2d 650 (1968) is also misplaced.

There, the Superior Court considered the "sole question" of whether an effective termination notice had been given. The contract in *Music* required that notice of termination be given sixty days before the expiration of the contract. The terminating party mailed the notice sixty-one days prior to the expiration date. Notice was received fifty-eight days before the contract was scheduled to expire. The Court held that the notice was effective because the contract did not contain a "time is of the essence" clause. *Id.*

API argues that its letter of March 12, 1981, though untimely under the contract, was a clear and unambiguous notice to terminate. Further, because the contract had no "time is of the essence" clause, under *Music,* the untimely notice was effective. In so urging, API ignores *Music's* most relevant language and misapprehends its holding.

*Music* did not, without qualification, sanction untimely notices to terminate. Rather, *Music* "approved a rule of [contract] construction" that an untimely notice to terminate is effective when the terminating party "acted reasonably ... and [where] there is no demonstrable prejudice". *Music, Inc. v. Henry B. Klein Co.,* 213 Pa.Super. at 185, 245 A.2d 650. Continuing, the court concluded that under the circumstances at bar, there was no "showing" of prejudice which resulted from the untimely notice of termination. *Music, Inc. v. Henry B. Klein Co.,* 213 Pa. at 186, 245 A.2d 650.

The rule which we distill from *Music* is this: in the absence both of a clause which deems that "time is of the essence" and a "showing" that the party which suffered the untimely notice was "damaged" or had "changed its position to its detriment", it is "unconscionable" to give effect to an automatic renewal provision of a contract. 213 Pa.Super. at 186, 245 A.2d 650. Applying this rule, *Music* concluded that the notice of termination was effective.

---

1. Similarly, in *Restaurant Associates Industries, Inc. v. Anheuser-Busch, Inc.,* 422 F.Supp. 1105 (S.D.N.Y.1976), which involved the application of Florida law, the notice of termination was specifically referenced to paragraph 4(b) of the contract. That paragraph provided for the automatic renewal of the agreement unless prior notice was sent. *Id.* at 1107–08.

In the instant matter, there is no clause which deems that "time is of the essence". However, Eastern has made an unrebutted showing that it was damaged by the forced sale of large volumes of milk at distress prices. *See e.g.,* Affidavits of Michael H. Donovan, ¶ 8; Carl Lanning, ¶ 2; Herbert W. Dorn, ¶ 5. This evidence satisfies *Music's* requirement that a "showing" of "demonstrable prejudice" be made. Hence, the untimely notice to terminate is ineffective. 213 Pa.Super. at 185.

Defendants' final argument need not detain us. They argue that Eastern was *verbally* informed of their intention to terminate. Further, defendants asseverate that *Music* held an oral notice sufficient notwithstanding the contractual requirement of a *written* notice.

Contrary to this assertion, *Music* did not "hold" that oral notice was sufficient. Rather, the court observed in *dictum* that the "position has also been taken that the notice may be verbal even though the contract calls for written notice". *Music, Inc. v. Henry B. Klein Co.,* 213 Pa.Super. at 185 n. 3, 245 A.2d 650. Our characterization of this footnote as *dictum* springs from a plain reading of the court's language as well as the court's framing of the issue for decision. 213 Pa.Super. at 184, 245 A.2d 650. *Cf., Chowdhury v. Reading Hospital & Medical Center,* 677 F.2d 317, 324 (3rd Cir.1982) (Aldisert, J., dissenting) (*dictum,* characterized as "statements of law in an opinion which could not logically be a major premise of the selected facts of the decision" are the "antithesis of precedent".) (quotations omitted).

An appropriate order shall issue.