

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-1994

# Otis Elevator Company v. George Washington Hotel Corp.

Precedential or Non-Precedential:

Docket 93-3447

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Otis Elevator Company v. George Washington Hotel Corp." (1994). *1994 Decisions*. Paper 58.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/58

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 93-3447
_____

OTIS ELEVATOR COMPANY
Appellee

v.

GEORGE WASHINGTON HOTEL CORPORATION
STANLEY S. BAZANT

Stanley S. Bazant,
Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 91-1966)

_____

Argued May 13, 1994

Before:  BECKER, LEWIS, Circuit Judges
and POLLAK, District Judge[1]

Filed June 24, 1994

_____

Albert J. Zangrilli, Jr. (argued)
Yukevich, Blume & Zangrilli
6th Floor, One Gateway Center
Pittsburgh, PA  15222

Attorney for Appellee

Steven M. Petrikis (argued)
Jeffrey P. Brahan
Rose, Schmidt, Hasley & DiSalle, P.C.
900 Oliver Building
Pittsburgh, PA  15222-5369

_____

[1] Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1

Attorneys for Appellant
_____

OPINION OF THE COURT
_____

POLLAK, District Judge.

This diversity case arises out of a contractual dispute between Stanley Bazant, a hotel owner, and Otis Elevator Company. Intertwined with certain procedural questions is one substantive question of Pennsylvania law. That question concerns the construction of a so-called "automatic renewal provision" -- that is, a contractual provision pursuant to which a contract for a term is renewed automatically for a further term unless, before a specified date, one party gives notice of an intent to terminate. The district court held that Bazant's late notice of his intent to terminate the contract did not suffice to avoid renewal. On appeal, Bazant argues that his late notice ought to have been deemed sufficient since Otis did not demonstrate that it would be prejudiced by Bazant's tardiness. Bazant relies on a Pennsylvania Superior Court decision -- Music, Inc. v. Henry B. Klein Co., 245 A.2d 650 (Pa. Super. 1968) -- which appears to be the only Pennsylvania appellate case directly addressing the question. In Music, the Superior Court was sharply divided. Since Music, and prior to the case at bar, the question has been addressed on at least three occasions by district judges in this circuit, and Music has received mixed reviews. We conclude that in the case at bar the district court correctly declined to follow the prevailing opinion in Music -- an opinion which we

2

think is not likely to be followed by the Pennsylvania Supreme Court.

Part I of this opinion describes the background and procedural history of this case. Part II analyzes the issues raised by Bazant's appeal.

## I.

Otis Elevator Company ("Otis") entered into an elevator maintenance and service contract with the George Washington Hotel Corporation on December 12, 1980. The contract provided for service from January 1, 1981 until December 31, 1990 at the George Washington Hotel in Washington, Pennsylvania. The contract also provided that the contract would be renewed automatically for a five-year term unless a party gave notice of an intent to terminate at least ninety days before the end of the contract term:

> Either party may terminate this agreement at the end of the extended contract term selected above or at the end of any subsequent five year period by giving the other party 90 days prior written notice.

Stanley Bazant ("Bazant") is the successor in interest to the George Washington Hotel Corporation and is the only remaining defendant in this case. On November 30, 1990 -- thirty-one days before the end of the extended contract term -- Robert Bazant, Stanley Bazant's son and the Hotel's controller, sent a letter to Otis stating an intent to terminate the contract as of December 31, 1990. On December 6, 1990, a representative of Otis

3

responded by letter. In Otis' view, the contract had already been automatically renewed for a five-year term.

Stanley Bazant disagreed with Otis' position that automatic renewal had occurred. In addition, Bazant withheld payments for the last three months of the contract term (October through December, 1990). According to Bazant, he withheld payments because of problems with Otis' service.

Otis filed the instant action in the United States District Court for the Western District of Pennsylvania on November 15, 1991. On January 2, 1992, Otis filed an amended complaint alleging two counts against Bazant: (1) count II, seeking damages from Bazant for breach of contract based on Bazant's failure to pay Otis the monthly contract price for the months of October through December, 1990; and (2) count IV, seeking damages from Bazant based on Bazant's failure to honor the renewed contract term.

On February 6, 1992, Bazant filed an answer to the amended complaint that contained a counterclaim. The counterclaim alleged that Otis had failed to follow through on a commitment to give Bazant a twenty-percent discount.

On July 21, 1992, Bazant moved for partial summary judgment. Bazant argued in that motion that he was entitled to summary judgment on count IV of Otis' complaint because Robert Bazant's November 30, 1990 letter terminated the contract with Otis. Otis filed a response to Bazant's motion, but did not file a cross-motion for summary judgment on count IV.

4

On August 24, 1992, Otis moved for summary judgment on Bazant's counterclaim. Bazant did not file a response.

In an opinion dated October 9, 1992, the district court denied Bazant's motion for summary judgment on count IV and, acting sua sponte, granted summary judgment to Otis on count IV. The district court also granted Otis' motion for summary judgment on Bazant's counterclaim.

Up to that point in the proceedings, Bazant's only substantive defense to Otis' count IV claim had been that, under the terms of the contract and the applicable Pennsylvania case law, Robert Bazant's letter of termination sufficed to avoid automatic renewal. Five months after the district court granted summary judgment in Otis' favor on count IV, Bazant filed a motion to amend his answer to the amended complaint to include the contention that termination was justified due to Otis' substantial non-performance of its contractual duties. By order dated March 17, 1993, the district court granted Bazant's motion to file an amended answer.

At a pre-trial conference on August 4, 1993, Bazant voiced an objection to the district court's proposed jury instructions: Bazant complained that the proposed instructions directed the jury that Bazant's liability with respect to count IV had already been determined, and that the only issue for the jury with respect to that count was the measure of damages. Bazant protested that the proposed instructions did not allow him to raise non-performance as a defense to liability under count IV; he was only allowed to raise non-performance as a defense to

5

liability under count II, the count seeking damages for Bazant's non-payment for services rendered by Otis in October through December of 1990. Bazant argued that, by allowing him to amend his answer, the district court had reopened the issue of Bazant's liability under count IV, notwithstanding the October 9, 1992 order granting summary judgment on that count. The district court disagreed. The district court regarded the issue of liability with respect to count IV as decided by its October 9, 1992 order, and concluded that Bazant could assert non-performance only as a defense to liability under count II.

At trial, on August 5, 1993, Bazant sought to testify about two events relevant to his claim that he was entitled to a twenty-percent discount. At side-bar, Bazant made the following proffer. Bazant said that, if allowed to testify, he would say that he telephoned Otis in October 1990 and asked to speak to an Otis representative regarding the Hotel's account. His call was directed to someone identified as Mr. Mahoney who stated that the Hotel would be given a twenty-percent discount if it agreed to the five-year renewal term. The district court excluded the testimony on the ground that Bazant had not come forward with evidence that the person identified as Mahoney had authority to make admissions for Otis. Bazant was permitted to testify that, at a meeting in December 1990, Otis' account representative for the Hotel, Peter Volmer, reiterated this twenty-percent discount offer. The district court, however, later concluded that this testimony could not support a jury verdict for Bazant on the counterclaim and directed a verdict in Otis' favor on the

6

counterclaim.  The district court reasoned that, because the December 1990 meeting occurred after the ninety-day deadline for providing notice of termination, the contract had already been renewed and thus there was no consideration to support a promise to give a twenty-percent discount.

The jury rendered a verdict in favor of Otis and against Bazant, in the amount of $4,000 for the months of October, November and December of 1990 (count II), and $33,194 for the five-year renewal period (count IV).

On appeal, Bazant challenges the rulings of the district court:  (1) denying Bazant's motion for summary judgment on count IV; (2) granting summary judgment, sua sponte, in Otis' favor on count IV, and instructing the jury that Bazant's liability had been established with respect to that count; and (3) excluding evidence relevant to Bazant's counterclaim and directing a verdict in Otis' favor on the counterclaim.

**II.**

A.   The denial of Bazant's motion for summary judgment on count IV

In his motion for summary judgment on count IV, Bazant argued that his son's November 30, 1990 letter stating the Hotel's intention to terminate the contract with Otis sufficed to avoid automatic renewal.  To support his position, Bazant relied upon Music, Inc. v. Henry B. Klein Co., 245 A.2d 650 (Pa. Super. 1968).  In Music, the prevailing opinion in the Pennsylvania Superior Court observed that the automatic renewal provision at

issue did not contain a "time is of the essence" clause.  After making this observation, the <u>Music</u> court refused to enforce the automatic renewal provision because the plaintiff had not shown that it was prejudiced by the late notice.  The district court in the present case declined to follow <u>Music</u> and instead endorsed the approach taken in <u>Sungard Services Co. v. Joint Computer Center</u>, 1989 U.S. Dist. LEXIS 4449, No. 88-8367 (E.D. Pa. April 26, 1989).  In <u>Sungard Services v. Joint Computer</u>, Judge Newcomer enforced an automatic renewal provision that did not contain a "time is of the essence" clause without requiring a showing of prejudice.  Accordingly, in the case at bar, the district court concluded that Bazant's untimely notice was not effective to terminate the contract and denied Bazant's motion for summary judgment.  On appeal, Bazant challenges the district court's unwillingness to follow <u>Music</u>.

The contract at issue in <u>Music</u> provided for automatic renewal for a second term of nearly four years unless a party gave written notice of termination sixty days before the end of the term.  The defendant mailed such notice sixty-one days before the end of the contract term; the notice was received fifty-eight days before the end of the term.  The sole question raised on appeal was whether effective termination notice was given pursuant to the terms of the contract and the intent of the parties.  Judge Spaulding, joined by Judges Wright and Jacobs,[2]

---

[2]Judge Montgomery concurred in the result.  Judge Hoffman filed a dissenting opinion in which Judge Watkins joined.  Judge Hannum did not participate in the disposition of the case.

8

first noted that "[t]here was no specific provision in the contract making time of the essence and no circumstances have been demonstrated which clearly indicate that both parties intended that time should be of the essence." Music, 245 A.2d at 651. The Superior Court next observed that "[s]everal other courts have applied a rule of construction which permits a finding that a termination is sufficient even though delivered later than the period specified in the contract when the terminating party acted reasonably under the circumstances and there is no demonstrable prejudice resulting from the delayed notice." Id. at 652. The Music court concluded that, "[a]bsent a showing that appellant was damaged in any way by receipt of the termination notice on October 3rd, or that he changed his position to his detriment, it would be unconscionable to hold appellee to an additional contract of three years and eight months." Id.

In dissent, Judge Hoffman argued that "[t]his holding disregards the clear meaning of the contract and the intent of the parties." Id. at 653. Judge Hoffman reasoned that the time limitation was included for the benefit of both parties, and contended that "[t]o allow the defendant to expand the time limitation, in and of itself reasonable, by an additional reasonable period of time would give it something for which it did not bargain." Id. Because the requirement of the automatic renewal clause was "clear and unequivocal," Judge Hoffman concluded that no "time is of the essence" clause should be required, and that the contract should be enforced as written.

9

Id. Judge Hoffman recognized that the law will infer that time is not of the essence in order to avoid a severe penalty or forfeiture. See id. (citing 5 A. Corbin, Contracts, § 1177 (1964)). However, Judge Hoffman explained:

> [N]o forfeiture or penalty results here if it is held that the termination notice as given is ineffective. The defendant would still be entitled in the future to whatever benefits were conferred upon him by the contract. While defendant may have determined that these benefits were of little or no value to him, he can no more seek to avoid the clear obligations of the second term of his contract than if he had discovered this fact immediately after the commencement of the initial term of the contract.

Id.

Two district judges have followed the approach taken by Judge Spaulding for the plurality in Music. The contract in Eastern Milk Producers Cooperative Assoc. v. Lehigh Valley Cooperative Farmers, 568 F. Supp. 1205 (E.D. Pa. 1993), contained an automatic renewal provision that required sixty-days notice to avoid renewal for another year. Judge Troutman noted that, as in Music, the contract contained no "time is of the essence" clause. See id. at 1209. However, Judge Troutman concluded that the plaintiff had made an unrebutted showing that it was damaged by the forced sale of large volumes of milk at distress prices. See id. For this reason, Judge Troutman held that the untimely notice was not effective.

In Schindler Haughton Elevator Corp. v. The America College, Slip Opinion, No. 85-2577 (E.D. Pa. February 11, 1986), then District Judge Scirica addressed the question of the

10

enforceability of an automatic renewal provision. Judge Scirica explained that, "[u]nder Music, such untimely notice is effective, provided 'the terminating party acted reasonably under the circumstances and there is not demonstrable prejudice resulting from the delayed notice.' These issues of reasonableness and prejudice are questions of fact to be determined at trial." (citations to Music and Eastern Milk omitted).

In contrast, Judge Newcomer declined to follow Music in Sungard Services v. Joint Computer. Judge Newcomer explained that "two sophisticated business entities," Sungard and JCC, had a written contract with a "clear and unambiguous automatic renewal provision" that required six months notice to avoid a new two-year term. Three and one-half months before the end of the term, JCC gave notice to Sungard of its wish to terminate the contract and refused to make payments for the next term. Judge Newcomer first observed:

> As a result of this breach, Sungard suffered damages by being deprived of revenue that it would have received through the remainder of the contract period. At the risk of stating the obvious, this revenue would serve as a source of funds by which Sungard could meet its contractual obligations to entities supplying it with goods and services and would also provide profit to Sungard. Clearly, then, the loss of such revenue harmed Sungard.

Id. at *9. After making this observation, Judge Newcomer reviewed the facts and holdings of Music, Eastern Milk,

11

Schindler, and Sungard Services Co. v. Wang Laboratories, Inc.,
No. 87-3150 (E.D. Pa. April 5, 1988).[3]

Based on his review of the applicable Pennsylvania case law,
Judge Newcomer concluded that the automatic renewal provision at
issue was not, in and of itself, unconscionable. Judge Newcomer
stated:

> To the extent that the court's holding conflicts with the
> Pennsylvania Superior Court's holding in Music, I
> respectfully disagree with that court. I note, however,
> that the facts of the instant case are distinguishable from
> those in Music, as Music involved a notice of termination
> mailed prior to the time required and received only two days
> after the deadline for advance termination of the contract.

Id. at *14.

In the case at bar, the district court enforced the
automatic renewal provision and held that Bazant's late notice of
termination was ineffective. The court first undertook to
distinguish Music: "Bazant's reliance on Music . . . is
misplaced. Music involved a notice of termination mailed prior

---

[3]In Sungard Services Co. v. Wayne Laboratories, Inc., No. 87-3150
(E.D. Pa. April 5, 1988), an automatic renewal provision required
six-months notice to avoid renewal for an additional two year
term. Judge Bechtle held that, in light of the defendant's
untimely termination notice, the contract was automatically
renewed. Judge Bechtle did not require a showing of prejudice;
however, this omission probably did not reflect a decision by
Judge Bechtle not to follow Music. It appears from Judge
Bechtle's opinion, delivered from the bench, that the defendant
did not argue that the plaintiff had to show prejudice or
otherwise call Music to the attention of the district court.
Indeed, the defendant apparently conceded that its late notice
was ineffective under the automatic renewal clause, and argued
instead that it had terminated the contract under a separate
provision allowing termination on ninety days notice if certain
conditions were satisfied. See Bench Opinion, at 17.

12

to the time required and received only two days after the deadline for advanced termination of the contract. The instant case involves notice of termination which was dated (and presumably mailed) 58 days after the required date for advanced termination." Opinion, at 6-7 (citation omitted) (emphasis in original). The court next undertook to draw an analogy to Eastern Milk: "The automatic renewal provision in [Eastern Milk] was upheld in the absence of a 'time of the essence' clause, because the Court found that there had been a showing of prejudice as a result of the late notice. The instant case is no different." Opinion, at 7. The court explained that, just as in Sungard Services v. Joint Computer, the damage in the instant case is obvious:

> "[The plaintiff] suffer[s] damages by being deprived of revenue that it would have received through the remainder of the contract period. . . . [T]his revenue would serve as a source of funds by which [the plaintiff] could meet its contractual obligations to entities supplying it with goods and services and would also provide profit to [the plaintiff]. Clearly, then, the loss of revenue harmed [the plaintiff]."

Opinion at 7 (quoting Sungard Services v. Joint Computer). Finally, the district court concluded that because the automatic renewal provision is clear and unambiguous, it would be enforced. The court indicated that it was adopting "the cogent perspective set forth by Judge Newcomer in [Sungard Services] v. Joint Computer." Opinion, at 9.

We do not concur in the district court's conclusion that, even under the approach taken in Eastern Milk (building on the

13

plurality opinion in Music), Otis made a showing of prejudice sufficient to justify enforcement of the automatic renewal provision. The case at bar is not like Eastern Milk in this respect. In Eastern Milk, there was evidence that the plaintiff was harmed by the lateness of the notice -- the plaintiff was forced to sell large volumes of milk at distress prices. In contrast, the harm to the plaintiff in the present case is harm caused by the breach of contract, not harm caused by the late notice. That is, even if the notice had been timely, Otis would have suffered the same harm (loss of profits expected under the contract). This type of harm cannot be characterized as prejudice in the sense used by the Eastern Milk and Music courts.

We are persuaded, however, by the district court's decision to enforce the automatic renewal provision without requiring a showing of prejudice -- that is, by the district court's rejection of Music in favor of the approach taken by Judge Newcomer in Sungard Services v. Joint Computer. We do not believe that the Pennsylvania Supreme Court, if it has occasion to address this issue, will acquiesce in the rationale adopted by the plurality opinion in Music. Instead, we conclude that the analysis pursued by Judge Hoffman in his dissent is confirmed by the reasoning of Brakeman v. Potomac Insurance Co., 371 A.2d 193 (Pa. 1977), decided by the Pennsylvania Supreme Court nine years after the Superior Court's decision in Music.

Brakeman involved an automobile insurance policy that required, as a condition of coverage, that the insured give notice of an accident "as soon as practicable." Prior to

14

Brakeman, the Pennsylvania Supreme Court had held that untimely notice releases an insurer from its obligation to pay, regardless of whether the insurer was prejudiced by the delay. In Brakeman, the Pennsylvania Supreme Court overruled its prior decisions to this effect and announced that an insurer would have to show that it was prejudiced by the delay. The court explained that "[t]he rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language." Id. at 196.

The Brakeman court gave two reasons for departing from a strict contractual approach. First, the court explained that the only aspect of an insurance contract over which an insured can bargain is the amount of coverage. See id. at 196. The court noted that an automobile is a virtual necessity, that liability insurance coverage is required by state law, and that insurance policies uniformly include provisions requiring notice "as soon as practicable." See id. at 196 & n.6. Second, the court explained:

> A strict contractual approach is also inappropriate here because what we are concerned with is a forfeiture. The insurance company in the instant case accepted the premiums paid by the insured for insurance coverage and now seeks to deny that coverage on the ground of late notice.

Id. at 197. See also id. at 198 ("Allowing an insurance company, which has collected full premiums or coverage, to refuse compensation to an accident victim or insured on the ground of

15

late notice, where it is not shown timely notice would have put the company in a more favorable position, is severe and inequitable.").

The reasons given in <u>Brakeman</u> for departing from a strict contractual approach do not justify requiring a showing of prejudice to enforce the automatic renewal provision in the case at bar. First, although the automatic renewal provision appears in Otis' standard form contract, there is no indication that Bazant lacked the power to bargain over the contractual terms. Indeed, Bazant's contention in his counterclaim that he had negotiated a twenty-percent discount is incompatible with the notion that Bazant lacked significant bargaining power. Second, enforcement of the automatic renewal provision does not result in a forfeiture. Although -- assuming enforcement of the provision -- Bazant would be obligated by the automatic renewal of the contract to continue to make payments to Otis, Otis would be correspondingly obligated to continue to maintain and provide service for the Hotel's elevators. Because the reasons given in <u>Brakeman</u> for departing from a strict contractual approach do not apply, we conclude that the district court correctly held that Bazant's untimely notice did not enable him to avoid a new five-year term. Accordingly, we affirm the district court's denial of Bazant's motion for summary judgment on count IV.

B.   <u>The sua sponte grant of summary judgment in favor of Otis on count IV</u>

The district court not only denied Bazant's motion for summary judgment with respect to count IV, it granted summary judgment for Otis with respect to that count, sua sponte. Bazant argues on appeal that the district court improperly granted Otis summary judgment sua sponte, because the court did not give Bazant notice of its intent to do so or an opportunity to oppose summary judgment.

The district court's decision to grant Otis summary judgment on count IV sua sponte was understandable given the state of the record. The only defense Bazant had raised in his answer to the amended complaint was that the November 30, 1990 letter sufficed to terminate the contract. Bazant moved for summary judgment on count IV, arguing that there was no disputed issue of material fact. Accordingly, after the district court concluded that Bazant was incorrect on the legal issue -- that is, after determining that Robert Bazant's notice was ineffective -- the district court entered summary judgment for Otis. Although the district court's decision was understandable, it nonetheless constituted error under Rule 56 of the Federal Rules of Civil Procedure.

Under our cases, a district court may not grant summary judgment sua sponte unless the court gives notice and an opportunity to oppose summary judgment. See Davis Elliott Intern. v. Pan American Container, 705 F.2d 705, 707-08 (3d Cir. 1983) ("'[b]ecause the procedure of Rule 56 requiring an opportunity to present pertinent material, which presumes notice to the party so that he may take advantage of the opportunity,

17

was not followed, the entry of judgment must be reversed'") (quoting Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980)). See also Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069-70 (3d Cir. 1990) ("[I]n the absence of a formal motion for summary judgment, plaintiff was under no formal compulsion to marshall all of the evidence in support of his claims").

The district court could have cured its error by allowing Bazant to reopen the issue of his liability under count IV, but did not do so. Five months after the court sua sponte granted Otis summary judgment on count IV, Bazant moved to amend his answer to the amended complaint to add, as a defense, the allegation that Otis's substantial non-performance of its contract was cause for termination. It is apparent from this motion that Bazant wanted to assert non-performance as a defense against liability with respect to both count II and count IV -- not with respect to count II only. For example, paragraph 13 of the motion recites: "The bulk of evidence of such non-performance has already been submitted with respect to Count II and allowance of evidence with respect to Count IV would not materially prolong the arbitration which is set to continue on March 5, 1993." (A.78). The district court granted Bazant's motion to amend on March 17, 1993.

At a pre-trial conference on August 4, 1993, Bazant protested that the proposed jury charge instructed the jury that Bazant's liability under count IV had been determined as a matter of law and that the jury's role was simply to determine damages.

18

Bazant reminded the district court that, after summary judgment was granted for Otis on count IV, the district court gave Bazant leave to amend his answer to add the non-performance defense. The district court responded: "Well, once we enter summary judgment, it doesn't matter what you do in way of amending your answer." (A.119). The district court noted that it saw nothing in the "opinion [granting leave to amend] that talks about any counts," (A.120) and concluded that "liability [with respect to Count [IV]] had already been established, and so that your amendment has nothing to do with Count [IV]." (A.122).

It is arguable that the district court's decision to instruct the jury that Bazant's liability was established with respect to count IV was inconsistent with the district court's decision to grant Bazant's motion for leave to file an amended answer. We need not, however, address this possible inconsistency. Because the district court erroneously granted summary judgment in Otis' favor sua sponte and without giving Bazant notice and an opportunity to oppose summary judgment, and did not cure this error by allowing Bazant to reopen the issue of his liability under count IV, we vacate the order granting Otis summary judgment sua sponte on count IV. Our ruling is not to be taken as a direction to the district court to allow Bazant to raise non-performance as a defense to count IV liability. Whether Bazant is now entitled to raise that defense and whether that defense is substantively cognizable, are, at this point, questions for the district court to consider.

19

C.  The order directing a verdict in favor of Otis on
     Bazant's counterclaim

As explained above, Bazant brought a counterclaim asserting that Otis breached an agreement to give the Hotel a twenty-percent discount.  In the October 9, 1992 opinion, the district court granted Otis' motion for summary judgment on the counterclaim for two reasons.  "First, and foremost, defendant Bazant failed to reply to this motion [for summary judgment]," although he had been given two extensions of time within which to file his brief in opposition.  Opinion, at 4.  Second, there was no evidence in the record to support Bazant's assertion that he was entitled to a twenty-percent discount.  Opinion, at 4-5.

Bazant argues on appeal that, at trial, the court erred by refusing to allow the jury to consider evidence offered to support his counterclaim -- namely, the evidence of his conversations with Peter Volmer and the person identified as Mr. Mahoney -- and by directing a verdict for Otis on the counterclaim.  We need not, however, consider the court's specific evidentiary rulings.  Having already determined that summary judgment in Otis' favor was warranted by virtue of Bazant's failure to oppose the summary judgment motion, the court was under no obligation to let the counterclaim go to the jury. For this reason, we affirm the district court's order directing a verdict for Otis on the counterclaim.

**III.**

20

For the foregoing reasons:  (1) the denial of Bazant's motion for summary judgment on count IV of Otis' complaint is affirmed; (2) the sua sponte grant of summary judgment in Otis' favor on count IV is vacated; and (3) the order directing a verdict for Otis on the counterclaim is affirmed.  The case is remanded for proceedings consistent with this opinion.