773 A.2d 584

**GENERAL MOTORS CORPORATION,**

v.

**BANNINGS BELTWAY PONTIAC.**

**No. 1225, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

June 1, 2001.

672

Lawrence Buonomo, Detroit, MI (Kathlee A. Ellis and Piper, Marbury, Rudnick & Wolfe, LLP, Baltimore, on the brief), for appellant.

Peter H. Gunst (Julie Rubin Goldberg and Astrachan, Gunst, Goldman & Thomas, P.C., on the brief), Baltimore, for appellee.

Argued before HOLLANDER, JAMES R. EYLER and RAYMOND E. BECK (Specially assigned), JJ.

JAMES R. EYLER, Judge.

In this judicial review of a decision by the Motor Vehicle Administration (MVA), we are faced with an issue of statutory interpretation. Md.Code (1977, 1992 Repl.Vol.) Transportation § 15–209 prohibits the wrongful termination of an automobile dealer's franchise by an automobile manufacturer.[1] Section 15–209(a) provides that a manufacturer may not terminate, cancel, or fail to renew the franchise of a dealer unless (1) the dealer has failed to comply substantially with the reasonable requirements of the franchise and (2) the manufacturer gives the dealer at least 90 days prior written notice of the termination, cancellation, or nonrenewal and provides the MVA with a copy of that notice. We interpret the provision to require that the relationship remain in existence for 90 days after the notice is given, even if the contract term expires prior to that time. We do not interpret it as requiring that 90 days notice be given prior to the expiration date of the contract term in order to effect a termination, cancellation, or nonrenewal.

---

1. The provisions contained in section 15–209 remain the same in the current Transportation Article. *See* Md.Code (1999 Repl. Vol., 2000 Supp.) Transportation § 15–209.

## Factual Background

Bannings Beltway Pontiac, appellee, entered into a dealership agreement with General Motors Corporation, appellant, in 1981. A series of dealership agreements followed, each with a definite term. Beginning in 1986, appellee's sales performance started to decline. The parties attempted to address the problems with the dealership. Appellee was placed in appellant's Dealer Development Assistance Program in 1986 and remained in that program for ten years.

The last long-term dealership agreement between the parties expired on October 31, 1995. At that time, the parties entered into a short-term dealership agreement, which expired on April 30, 1996. The parties again entered a short-term agreement, which expired on August 31, 1996. Because appellee's sales continued to decline, appellant decided to terminate the relationship. By letter dated July 3, 1996, appellant informed appellee that it was terminating the relationship, effective 90 days later, on October 3, 1996.

On August 13, 1996, pursuant to Transportation § 15–209(e)(2), appellee requested a hearing to determine whether it had "failed to comply substantially with the reasonable requirements of the franchise." A hearing was held before an administrative law judge (ALJ) on January 7 through 9, 1998. Appellee raised various arguments challenging the purported termination of the relationship, including an argument that the notice given by appellant did not comply with the statute. Appellee argued that the statute required that notice be given at least 90 days prior to the expiration of the term of the agreement, rather than 90 days notice.

The ALJ, in a proposed decision, rejected all of appellee's arguments and found that appellee was not in substantial compliance with the requirements of the franchise.[2] The ALJ

---

2. The issue of whether the ALJ erred in finding that appellee was not in substantial compliance was not raised for appellate review, and, accordingly, is not before us.

also found that notice had been properly given. On October 19, 1999, the MVA adopted the proposed decision.

On November 4, 1999, appellee filed a petition for judicial review in the Circuit Court for Prince George's County. On July 17, 2000, the circuit court reversed the MVA's decision and remanded the case for further proceedings. The circuit court held that appellant had failed to provide adequate notice of termination of the parties' agreement in accordance with § 15–209.

## Standard of Review

In reviewing an administrative agency's decision, we must defer to the agency's fact-finding and drawing of inferences so long as they are supported by the record. *Board of Physician Quality Assur. v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999). In our review, we apply the substantial evidence test to determine "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Id.* (quoting *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119 (1978)). When an administrative agency's decision is founded on an erroneous legal conclusion, however, "we will substitute our own judgment for that of the agency." *Mayberry v. Board of Educ.,* 131 Md.App. 686, 701, 750 A.2d 677 (2000). The issue before us is more appropriately categorized as a question of law, rather than a finding of fact.

While ordinarily we accord an administrative agency's legal conclusions no deference, "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected." *Solomon v. Board of Physician Quality Assurance,* 132 Md.App. 447, 455, 752 A.2d 1217, *cert. denied,* 360 Md. 275 (2000) (quoting *Banks,* 354 Md. at 69, 729 A.2d 376 (1999)). In determining the weight to be accorded an agency's interpretation of a statute, we consider the extent to which the agency engaged in a process of reasoned deliberation in interpreting the statute.

*Haigley v. Department of Health & Mental Hygiene,* 128 Md.App. 194, 216, 736 A.2d 1185 (1999). As we stated in *Haigley,*

> [w]hen an agency clearly demonstrates that it has focused its attention on the statutory provisions in question, thoroughly addressed the relevant issues, and reached its interpretation through a sound reasoning process, the agency's interpretation will be accorded the persuasiveness due a well-considered opinion of an expert body.
>
> In addition, the nature of the process through which the agency arrived at its interpretation is a relevant consideration in assessing the weight to be accorded the agency's interpretation. *If the interpretation is the product of neither contested adversarial proceedings nor formal rule promulgation, it is entitled to little weight.*

128 Md.App. at 216–17, 736 A.2d 1185 (quoting *Baltimore Gas & Elec. Co. v. Public Service Comm'n,* 305 Md. 145, 501 A.2d 1307 (1986) (alteration in original)).

The ALJ's proposed decision was issued following a contested adversarial proceeding, and it is apparent from a reading of that decision that the ALJ focused specifically on § 15–209 and interpreted that provision through a sound reasoning process. The MVA subsequently adopted the proposed decision of the ALJ. We shall give the MVA's interpretation of § 15–209 significant weight, *see Solomon,* 132 Md.App. at 455, 752 A.2d 1217, and absent authority to lead us to a contrary conclusion, we shall affirm the MVA's decision.

## Discussion

We believe it would be helpful to begin our analysis by setting forth § 15–209 in full.

**Wrongful termination of dealer's franchise prohibited.**

(a) *Manufacturers.*—A manufacturer may not terminate, cancel, or fail to renew the franchise of a dealer, notwithstanding any term or provision of the franchise, unless:

(1) The dealer has failed to comply substantially with the reasonable requirements of the franchise; and

(2) Except as otherwise provided by subsection (d) of this section, the manufacturer:

(i) Gives the dealer at least 90 days' prior written notice of the termination, cancellation, or nonrenewal and of the specific grounds for the action; and

(ii) Provides the Administration[3] with a copy of that notice.

(b) *Distributors.*—A distributor may not terminate, cancel, or fail to renew the franchise of a dealer, notwithstanding any term or provision of the franchise, unless:

(1) The dealer has failed to comply substantially with the reasonable requirements of the franchise; and

(2) Except as otherwise provided by subsection (d) of this section, the distributor:

(i) Gives the dealer at least 90 days' prior written notice of the termination, cancellation, or nonrenewal and of the specific grounds for the action; and

(ii) Provides the Administration with a copy of that notice.

(c) *Factory branches.*—A factory branch may not terminate, cancel, or fail to renew the franchise of a dealer, notwithstanding any term or provision of the franchise, unless:

(1) The dealer has failed to comply substantially with the reasonable requirements of the franchise; and

(2) Except as otherwise provided by subsection (d) of this section, the factory branch:

(i) Gives the dealer at least 90 days' prior written notice of the termination, cancellation, or nonrenewal and of the specific grounds for the action; and

(ii) Provides the Administration with a copy of that notice.

---

**3.** The word "Administration" refers to the Motor Vehicle Administration. § 11–102.

(d) *Exceptions.*—The 90–day notice period required by subsection (a) of this section:

(1) May be reduced to not less than 15 days, if the ground for the termination, cancellation, or nonrenewal is the dealer's inability to reasonably serve the interests of the public; and

(2) Is not required, if the dealer waives in writing.

(e) *Hearing.*—

(1) If a dealer receives written notice that his franchise is being terminated, canceled, or not renewed, the dealer may, within the notice period required by this section, request a hearing under Title 12, Subtitle 2 of this article to determine whether the dealer has failed to comply substantially with the reasonable requirements of the franchise.

(2) If the dealer requests a hearing under this subsection, the dealer's franchise continues in effect, notwithstanding any term or provision of the franchise or any other provision of this subtitle, until the Administration, after the hearing, makes a final determination.

(3) A dealer, manufacturer, distributor, or factory branch may appeal the determination of the Administration to the circuit court for the county in which the person's principal place of business is located.

(4) A dealer, manufacturer, distributor, or factory branch may appeal from a final judgment entered by a circuit court to the Court of Special Appeals as provided in § 12–301 of the Courts and Judicial Proceedings Article.

(f) *Conveyance of dealership on wrongful termination of franchise.*—

(1) In addition to any administrative and criminal sanctions imposed under this subtitle, a manufacturer, distributor, or factory branch that terminates, cancels, or fails to renew the franchise of a dealer in violation of this section shall pay to the dealer the fair value of his business as a going concern.

(2) On payment, the dealer shall convey his business, free of liens and encumbrances, to the manufacturer, distributor, or factory branch.

Section 11–125 of the Transportation Article defines "franchise." The parties agree that the dealership agreement is a franchise. We also note that the definition indicates that a franchise may or may not be for a definite period. § 11–125.

▇▇▇ In engaging in statutory interpretation, our goal is "to ascertain and effectuate the intention of the legislature." *Haigley,* 128 Md.App. at 214, 736 A.2d 1185. We primarily look to the statute itself in order to determine legislative intent. *Id.* at 215, 736 A.2d 1185. In considering the language of the statute, we must give the words their "ordinary and common meaning" and "avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Id.* Furthermore, as the Court of Appeals stated in *Adamson v. Correctional Med. Servs.,* 359 Md. 238, 251–52, 753 A.2d 501 (2000) (citations omitted),

> [w]e often look to the legislative history, an agency's interpretation of the statute, and other sources for a more complete understanding of what the General Assembly intended when it enacted a particular legislation. In so doing, "[w]e may also consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." *Sinai Hosp. of Baltimore v. Department of Employment and Training,* 309 Md. 28, 40, 522 A.2d 382, 388 (1987). This enables us to put the statute in controversy in its proper context and thereby avoid unreasonable or illogical results that defy common sense.

Citations omitted; *see also Haigley,* 128 Md.App. at 214, 736 A.2d 1185 (stating that "[i]n determining legislative intent, we must never lose sight of the overriding purpose and goal of the statute.") (quoting *Martin v. Beverage Capital Corp.,* 353 Md. 388, 399, 726 A.2d 728 (1999)).

Before delving into statutory interpretation of § 15–209, we note preliminarily that the cases cited by appellee are not on point. In *Macke Co. v. Pizza of Gaithersburg, Inc.,* 259 Md.

479, 270 A.2d 645 (1970), the contracts at issue were for terms of one year, automatically renewable for a like term, "unless thirty (30) days written notice is given by either party to terminate service." *Id.* at 483, 270 A.2d 645. The Court rejected a contention that the contracts were terminable at any time on 30 days notice and held the termination was tied to the expiration of the term. *Id.* at 492, 270 A.2d 645.

In *Arnold Weiss Corp. v. Manisha Sportswear, Inc.*, 882 F.Supp. 58, 59 (S.D.N.Y.1991), a contract provided for a one year term that "automatically renewed from year to year unless revoked by either party with a 120[sic] written notice of such cancellation." The contract was entered into on September 1, 1982, and continued for several years. On June 23, 1989, the defendant sent a letter stating that it was terminating the contract as of October 21, 1989. The plaintiff argued that the contract automatically renewed for a year from September 1, 1989, because the defendant did not send the requisite 120–day written notice of cancellation before the anniversary date. The Court held that the contract automatically renewed due to the defendant's failure to provide timely notice of terminations because "[t]hat is what the contract says." *Id.* at 59–60.

In both cases, notice was tied to the expiration of the term as a matter of contract interpretation and the contracts were not terminable at any time. In the case before us, the contract had no automatic renewal provision. Furthermore, there is no contention that § 15–209 makes agreements terminable at any time.

*Otis Elevator Co. v. George Washington Hotel Corp.*, 27 F.3d 903 (3d Cir.1994), involved a contract between a hotel owner and Otis Elevator Company that contained a ten-year term. The contract further provided that it would renew automatically for a five-year term unless a party gave notice of an intent to terminate at least 90 days before the end of the contract term. Notice was given less than 90 days prior to the expiration of the term. The hotel owner argued that the contract should not renew for the five-year term because the

contract did not contain a time of the essence provision and because the other party did not sustain prejudice by virtue of the late notice. *Id.* at 908. The Court rejected that argument, and held that the contract automatically renewed due to the hotel owner's failure to provide notice 90 days prior to the end of the contract term. *Id.* at 910. The case is inapposite to the issue before us.

Beginning our interpretation of the statute at issue, we note that section 15–209 was first enacted in 1972 as part of the Laws of Maryland ch. 544, § 3. Section 3 created a subheading in Article 66–1/2 of the 1957 Maryland Code entitled "Manufacturers, Distributors, and Factory Branches." The new provisions appeared as §§ 5–701 through 5–709. Section 5–709 is the forerunner to Transportation § 15–209. In the recitals in the bill in question, the legislature found that the distribution and sale of vehicles in Maryland affects the general economy of the State, the public interest, and the public welfare. It concluded that it was necessary to regulate and license distributors, factory branches, and manufacturers engaged in the sale or distribution of such vehicles. It further stated that chapter 544 was enacted to "prevent frauds, discrimination and other abuses upon the citizens of the State of Maryland, in order to foster vigorous and healthy competition, to prevent the creation or perpetuation of monopolies, and to promote the public safety and welfare."

By chapter 14, § 2 of the 1977 Laws of Maryland, the legislature, as part of a recodification, repealed Art. 66–1/2 and enacted the Transportation Article. The revisor's note stated that § 15–209 contained new language derived from Art. 66–1/2, §§ 5–706(a)(4) and 5–709.

Pursuant to the Laws of Maryland 1982, ch. 820, § 3, the legislature amended § 15–209(c)(3) to provide that judicial review of an administrative decision must be filed in the county in which the person's principal place of business is located. That amendment is not material to the issue before us. In the Laws of Maryland 1983, ch. 247, the legislature amended § 15–209(c) to add subsection (4) to provide for a

right of appeal from the circuit court to this Court. In the 1986 Laws of Maryland ch. 472, § 1, the legislature revised the Transportation Article. In doing so, it amended several sections, including § 15–209. With respect to that section, new subsections were added so that manufacturers, distributors, and factory branches were dealt with in separate provisions, as it now appears, as opposed to being dealt with in one provision. This change was purely stylistic, and made no substantive change to the provision. Section 15–209 has undergone no further amendments since 1986. There have been no substantive changes pertinent to the issue before us subsequent to the original enactment of the predecessor to the current statute.

The Transportation Article contains several titles relating to "vehicle laws." *See* Transportation Article, Titles 11–27. Title 15 is headed "Vehicle Laws—Licensing of Businesses and Occupations." The title is aimed at the regulation of entities addressed by the subtitles. Subtitle 2 is labeled "Manufacturers, Distributors, and Factory Branches"; subtitle 3 is labeled "Dealers"; subtitle 4 is labeled "Vehicle Salesmen"; subtitle 5 is labeled "Automotive Dismantlers and Recyclers and Scrap Processors"; subtitle 6 is labeled "Title Service Agents"; subtitle 7 is labeled "Drivers' Schools"; and subtitle 8 is labeled "Driving Instructors."

As discussed above, the stated purpose behind the enactment of what is currently subtitle 2 was to increase the regulation of manufacturers, distributors, and factory branches in order to provide greater protection to consumers. *See* 1972 Md. Laws ch. 544, § 3. Subtitle 2 was not enacted with the intention of protecting a particular business segment *vis a vi* s another, *i.e.* to protect dealers from manufacturers, distributors, and factory branches. Prior to the enactment of chapter 544 of the 1972 Laws of Maryland, the Transportation Article already regulated the licensing of dealers, wreckers, scrap processors, and vehicle salesmen. *See* Md.Code (1957, 1970 Repl.Vol.), art. 66–1/2, §§ 5–101 to 5–608. Thus, in enacting chapter 544 of the 1972 Laws of Maryland, the legislature extended protection for consumers from a broader

segment of the automobile industry, beyond just protecting consumers against dealers, wreckers, scrap processors, and vehicle salesmen.

From an examination of the provisions found in subtitle 2, it is apparent that § 15–209 is neither a stand-alone provision nor is it intended to be the most important section in subtitle 2. Sections 15–202 to 15–206 contain a requirement that manufacturers, distributors, and factory branches be licensed by the MVA in order to conduct certain business within the State. Furthermore, manufacturers, distributors, and factory branches may not (1) coerce dealers, *see* § 15–207; (2) refuse to deliver new motor vehicles or new two-stage vehicles to dealers, *see* § 15–208; (3) wrongfully terminate a dealer's franchise, *see* § 15–209; or (4) prevent the transfer of ownership interests in a dealership, *see* § 15–211. Section 15–210 prohibits false, deceptive or misleading advertising by manufacturers, distributors, and factory branches. Section 15–212 provides for administrative sanctions, including the refusal, suspension, or revocation of a license, and section 15–213 provides a damage remedy for any person suffering financial injury or other damage as a result of a violation of the subtitle by any other person. In examining the individual provisions of subtitle 2 and placing them in the context of the other subtitles contained in Title 15, it is apparent that the substance of subtitle 2 is the regulation of the manufacturing side of the automobile industry for the protection of the consumer.

Section 15–209(e) provides that if a dealer receives notice that his franchise is being terminated, canceled, or not renewed, the dealer may request a hearing to determine whether the dealer has failed to comply substantially with the reasonable requirements of the franchise. If such a hearing is requested, the franchise continues in effect until the MVA, after the hearing, makes a final determination. When the notice provision is read in connection with this provision, it appears that the intent was to provide to a dealer 90 days within which to make a determination to accept the termination, cancellation, or non-renewal or to initiate a proceeding

to challenge the termination, cancellation, or nonrenewal.[4] With that purpose in mind, the 90 day notice provision would have no necessary relationship to the expiration date of the contract. Such a result also comports with the fact that subtitle 2 was enacted for the protection of the consumer, rather than to afford dealers greater protection against manufacturers, distributors, and factory branches.

Furthermore, such a reading of the statute also comports with the express language contained in § 15–209. *See Martin v. Beverage Capital Corp.*, 353 Md. 388, 400, 726 A.2d 728 (1999)(stating that "in interpreting and determining legislative intent, we must look to the plain language of the enactment, while keeping in mind its overall purpose and aim."); *Fairbanks v. McCarter*, 330 Md. 39, 47, 622 A.2d 121 (1993)(a court may not "inferentially manufacture additional components of the statute that do not exist."). The statute contemplates that a franchise agreement might contain a definite term or an indefinite term. Section 15–209 does not, by its language, reference expiration of the term in the contract. *Compare* the Maryland Fair Distributorship Act, Md.Code (1975, 2000 Repl. Vol.) Commercial Law (C.L.) §§ 11–1301 to 1307 *and* the Maryland Gasohol and Gasoline Products Marketing Act, C.L. §§ 11–301 to 11–308. Section 11–1303(a) of the Maryland Fair Distributorship Act states that a grantor of distribution and sales rights must notify a distributor not less than 60 days before "[t]he proposed date of cancellation of an agreement that has not expired according to its terms; or [ ][f]or agreements that contemplate renewal options exercisable by either party, the expiration date of an agreement that the grantor does not intend to renew." Similarly, section 11–304(f) of the Gasohol and Gasoline Products Marketing Act requires that a distributor who intends not to renew a marketing agreement give notice of that intent "to the retail service station dealer at least 90 days before the expiration of the

---

**4.** If a dealer requests a hearing under § 15–209(e), the dealer's franchise remains in effect until the MVA makes a final determination. § 15–209(e)(2).

term of the marketing agreement, whether or not the marketing agreement contains a provision for automatic renewal, or by its terms, expires at a fixed time." Sections 11–1303 and 11–304 demonstrate that the legislature is well aware of how to key the notice requirement of a cancellation or nonrenewal to the expiration date stated in a contract.[5]

We hold that while § 15–209 requires that a manufacturer, distributor, or factory branch provide a dealer with 90 days notice of termination, cancellation, or nonrenewal, such notice need not be given 90 days prior to the expiration date stated in the contract between the parties.[6] Accordingly, the judgment of the circuit court is reversed.

**JUDGMENT REVERSED. COSTS TO BE PAID BY APPELLEE.**

---

**5.** Neither § 11–304 nor § 11–1304 expressly states that, in the absence of such notice, the contract will automatically renew for the same term. Section 11–304(f) states that "[f]ailure to give notice constitutes a renewal of the marketing agreement for a term of one year from its stated expiration date." Section 11–1304 does not explicitly state what result occurs if a grantor fails to give notice to a distributor, or gives deficient notice. Section 11–1304(e) does state, however, that "the notice and cure provisions of this subtitle do not apply to a termination of a distributorship at the natural expiration of the specified term of a written contract that does not contemplate renewal options exercisable by either party."

**6.** The agreement in the case before us contained no automatic renewal clause, and the statute does not expressly impose such provision as a matter of law. If we were to read the statute as appellee suggests, we note that there is no requirement in the statute with respect to the length of term of a new agreement after the expiration of the term in the existing agreement. Consequently, a new agreement could be tendered for a term no longer than necessary to meet the 90–day notice requirement. If such a contract were tendered, then there would not be a termination, cancellation, or nonrenewal, and thus, there would be no violation with respect to the existing agreement.